## BUDD v. COMMISSIONER OF INTERNAL REVENUE.

### No. 4069.

Circuit Court of Appeals, Third Circuit.

Aug. 13, 1930.

510

H. S. Drinker, Jr., and Leslie M. Swope, both of Philadelphia, Pa. (Dickson, Beitler & McCouch, of Philadelphia, Pa., of counsel), for petitioner.

Sewall Key and John V. Groner, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Elden McFarland, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge.

This is an appeal from an order of redetermination of taxes for the year 1921 of $55,980.87 on the sale of 7,500 shares of the preferred stock of the Budd Wheel Company on the ground that the sale was not bona fide.

On February 2, 1920, Mr. Edward G. Budd purchased 7,500 shares of the stock of the Budd Wheel Company of which he was president, at $100 a share for the total price of $750,000. The stock declined in value to $70 a share, and on November 15, 1921, he sold 3,000 shares of the stock to Mr. William B. Read, treasurer of the Budd Wheel Company. Mr. Budd indorsed and signed over to Mr. Read the certificates for the stock. The proper transfer stamps were attached to the certificates and canceled and the certificates were delivered to the Commercial Trust Company, the transfer agent of the company. On the same day the company issued new certificates to Mr. Read, which were countersigned by the transfer agent and registered by the Commonwealth Title & Insurance Company, the registrar.

Mr. Read gave to Mr. Budd in payment of the stock his promissory note dated November 15, 1921, payable February 1, 1922, for $210,000, bearing interest at the rate of 6 per cent. per annum. On the back of the note United States Revenue Stamps in the amount of $42 were affixed and canceled on the same date, November 15, 1921.

Mr. Read was worth over $600,000 at the time of these transactions, and the sale was admittedly made at that time for the purpose of taking a loss, but the testimony shows that there was no agreement, written or oral, or any understanding of any kind that Mr. Budd should subsequently repurchase the stock or that there should be an accounting of profits and losses between them.

Subsequently Mr. Read sold 660 of these shares of stock to a Mr. Campbell, leaving 2,340. The proceeds of this sale were deposited in the bank account of Mr. Read, who then drew his personal check for the amount and sent it to Mr. Budd and noted on the check that it was in curtailment or reduction of the note for the stock, but Mr. Budd appears not to have made any indorsement of the payment on Mr. Read's note.

On February 17, 1923, about fifteen months after the sale to Mr. Read, he sold to Mr. Budd the 2,340 shares, which he had left, in consideration of the cancellation and return of his note, which, as before mentioned, had been reduced, by the proceeds

of the 660 shares to Mr. Campbell. The value of the stock had remained the same during the time it was held by Mr. Read, who had not paid any interest on the note, but the interest was offset by the cumulative 8 per cent. dividends which Mr. Read had not collected and which had accrued during the time Mr. Read had held the stock.

These are the undisputed outstanding facts in the transaction, and the question is whether they constituted sufficient evidence on which the United States Board of Tax Appeals could find that the sale was not bona fide. If the sale was not, it was fraudulent, made with the intention of taking a loss when he was not entitled to it under the statute and of defrauding the government to that extent.

The determination of the commissioner is presumptively correct. United States v. Anderson, 269 U. S. 422, 46 S. Ct. 131, 70 L. Ed. 347, Wickwire v. Reinecke, 275 U. S. 101, 48 S. Ct. 43, 72 L. Ed. 184. The Commissioner says the petitioner has not sustained the burden of proof which rests upon him in all cases before the Board of Tax Appeals to establish the contrary. On this theory of the case, did the petitioner bear the burden?

While the findings of fact by the Board are not conclusive, yet they will not be disturbed if there is any competent and substantial evidence to sustain them. De Ford v. Commissioner (C. C. A.) 29 F.(2d) 532, 533; Royal Packing Co. v. Commissioner (C. C. A.) 22 F.(2d) 536, 538; Ox Fibre Brush Co. v. Blair (C. C. A.) 32 F.(2d) 42, 45.

Two questions arise: (1) Was there any competent and substantial evidence to sustain the finding that the sale was not bona fide but fraudulent? (2) Was there any evidence sufficient to overcome the presumption that the Commissioner's determination was correct?

As to the first question the Commissioner did not offer any evidence, but relied upon the evidence of the petitioner. He says that the testimony of the petitioner and Mr. Read was vague, their memory was bad in that Mr. Budd was unable to recall whether the stock of his company went up or down after the sale to Mr. Read; that Mr. Read was unable to remember the month or year when he sold the stock to Mr. Campbell and was unable to produce the check with which he paid the petitioner. The Commissioner further submitted the following testimony of Mr. Read

as justifying the implication that the sale was not bona fide:

"Q. Do you remember telling the revenue agent while there was no legal liability on your part to return any of this stock that you did feel morally responsible and liable to do so?

"Mr. Drinker: I object to any question of moral responsibility.

"The Member: The objection is overruled.

"Q. Do you remember such conferences? A. Yes; I recall such conferences.

"Q. Yes; and you expected to turn the stock back to Mr. Budd? A. I expected that the stock would be sold or disposed of.

"Q. And the proceeds turned back to Mr. Budd? A. I expected to satisfy my note; yes sir.

"Q. There would be a whole lot more from the proceeds than would be required to satisfy the note? A. Yes.

"Q. What did you expect to sell it at? A. What did I expect to sell it at?

"Q. Yes. What did you hope to sell it at? A. Why, I hoped to sell it at 100.

"Q. And there would be more proceeds than the amount of the $210,000 note? A. Yes.

"Q. And that would all go back to Budd? A. There was no agreement to that effect.

"Q. I am not asking what you did, but what you expected to do. A. I do not know what I expected to do."

It must be remembered that the sale was in 1921 and the testimony was taken in 1928. It would be very easy for men of large affairs not to remember the month or year of a particular sale or to be unable to produce a check used six or seven years before when there was nothing to call their particular attention to them. It is perfectly natural that Mr. Read did not know just what he expected to do with the profit that he hoped to make from the sale of the stock. It seems to us that the answer is characteristic of an honest mind. If he had taken part in manufacturing a case and had been perpetrating a fraud on the government, he would have remembered exact dates and would have known just what he intended to do with the profit, but looking back seven years, he could not recall in 1928 exact dates and could not say exactly what he expected to do with the profit which he in 1921 hoped to make. We do not think that the documents showing the transactions and the testimony of Mr. Budd and

Mr. Read constitute sufficient evidence to justify the conclusion that the sale was fraudulent. The sale to Mr. Campbell positively shows that, at least as to 660 shares, there was no agreement to resell that to Mr. Budd unless that agreement was later modified or breached and of this there is no evidence.

As Judge Dickinson said in the case of In re Heilbron Bros., Inc. (D. C.) 226 F. 803: "Although it is true that the findings of the trier of facts will not be disturbed, unless devoid of substantial support in the evidence, fact inferences drawn will be reviewed and corrected, if the inference as drawn is unsupported by the facts as found, or if the wrong inference is drawn." We think that the inference drawn of mala fides from undisputed facts is unreasonable and unsupported by any substantial evidence. There must be something more than mere suspicion that a perfectly legitimate transaction by men of high and unquestioned integrity was made for the sole purpose of committing a fraud by reducing taxes on account of a loss suffered in the depreciation of stock. "If the device is carried out by means of legal forms, it is subject to no legal censure." United States v. Isham, 84 U. S. (17 Wall.) 496, 21 L. Ed. 728.

This, however, leaves still standing upon the petitioner the burden of proof of showing the Commissioner's determination, which is presumptively correct, to be erroneous.

In plain terms the position of the Commissioner is that Mr. Budd and Mr. Read are guilty of an attempt to commit a deliberate fraud. It is a general principle that fraud is never to be presumed, and he who avers it, takes upon himself the burden of proving it. Addleman v. Manufacturers' Light & Heat Co., 242 Pa. 587, 590, 89 A. 674; Maguire v. Preferred Realty Co., 257 Pa. 48, 52, 101 A. 100; In re Kayser (C. C. A.) 177 F. 383, 386. The determination of the Commissioner being presumptively correct, in appealing from the additional assessment, Mr. Budd was required to prove a sale, transfer of title, a valuable consideration, and the other positive elements upon which he relied. This he did, and this must stand unless the sale was a pretense and a fraud. That it was is in substance what the Commissioner charges. It is necessary for him to bear the burden of establishing this by clear proof, Bamberger v. Schoolfield, 160 U. S. 149, 16 S. Ct. 225, 40 L. Ed. 374; Lalone v. United States, 164 U. S. 255, 17 S. Ct. 74, 41 L. Ed. 425, unless the well-established rule of law generally applicable is different in tax cases, and the Commissioner says it is. The Commissioner made no attempt to prove fraud, but relied upon Mr. Budd to negative the charge of fraud. But fraud cannot be inferred by the court or jury from acts, legal in themselves and consistent with an honest purpose. Foster v. McAlester et al. (C. C. A.) 114 F. 145, 152.

Section 907(a) of the Revenue Act of 1926 (44 Stat. 107), in force when this case was heard, provides as follows:

"The proceedings of the Board and its divisions shall be conducted in accordance with such rules of practice and procedure (other than rules of evidence) as the Board may prescribe and in accordance with the rules of evidence applicable in courts of equity of the District of Columbia."

The Board of Tax Appeals prescribed the following rule of practice to be used before it:

"The burden of proof shall be upon the petitioner, except that in respect of any new matter of fact pleaded in his answer, it shall be upon the respondent."

The Board accordingly held that the burden was on the petitioner to prove himself innocent of fraud and not upon the Commissioner to bear the burden of proving him guilty of fraud. This was the real ground upon which it sustained the determination of the Commissioner. It said: "The petitioner has not met the burden of showing the respondent's determination to be erroneous." This is in accordance with its rule, and is the position upon which the Commissioner stands in his brief. While the Board may prescribe rules of *practice,* it may not prescribe rules of *evidence,* and the burden of proof is a rule of *evidence* and not a rule of *practice* or *procedure.* Young v. Lowry (C. C. A.) 192 F. 825; Central Vermont Railway Co. v. White, 238 U. S. 507, 512, 35 S. Ct. 865, 59 L. Ed. 1433, Ann. Cas. 1916B, 252.

Hence the general rule of evidence prevails that he who alleges fraud must prove it. The above rule of the Board is inapplicable to fraud and, as applied to it, was made without authority and is contrary to law. The Revenue Act of 1928, § 601 (26 USCA § 1219), specifically corrected this practice by amending section 907 of the Revenue Act of 1924 to read as follows:

"In any proceeding involving the issue whether the petitioner has been guilty of fraud with intent to evade tax, where no

hearing has been held before the enactment of the Revenue Act of 1928, the burden of proof in respect of such issue shall be upon the Commissioner."

This is simply declaratory of what the law was.

The burden was, therefore, on the Commissioner to bear the burden of proving his charge of fraud that the sale was not bona fide. This he failed to do, and the order of redetermination of the Board is reversed, the determination of the Commissioner set aside, and the income tax return of the petitioner approved.