UNITED STATES of America,
Appellant,

v.

Cecil THOMPSON, Appellee.

Cecil THOMPSON, Cross-Appellant,

v.

UNITED STATES of America,
Cross-Appellee.

Nos. 6180, 6181.

United States Court of Appeals
Tenth Circuit.

May 18, 1960.

**166**

Charles K. Rice, Asst. Atty. Gen. (Lee A. Jackson, I. Henry Kutz, Grant W. Wiprud, Attys., Dept. of Justice, James A. Borland, U. S. Atty., and J. C. Ryan, Asst. U. S. Atty., Albuquerque, N. M., with him on the brief), for the United States.

J. Edwin Fleming, Dallas, Tex. (Stephen L. Mayo, Dallas, Tex., with him on the brief), for Cecil Thompson.

Before PICKETT and BREITEN-STEIN, Circuit Judges, and SAVAGE, District Judge.

PICKETT, Circuit Judge.

Income tax deficiencies, including a 50% fraud penalty, were assessed against the plaintiff-taxpayer for the years 1942, 1943, 1944 and 1945. The deficiencies in dispute were paid and, after a claim for refund was denied, this action was brought to recover part of the amount assessed.[1] The complaint alleges that the taxpayer was free from fraud and the answer sets forth as an affirmative defense that the deficiencies assessed were due in whole or in part to the fraud of the taxpayer with intent to evade tax. The case was tried to a jury which returned a special verdict finding that the 1944 and 1945 deficiencies were due to fraud and that the 1942 and 1943 deficiencies were not. Judgment was entered on the verdict and both parties have appealed.

The United States, in its appeal, presents only the question of which party has the burden of proving fraud in a refund case. The question arises from the court's instruction to the jury stating that the burden was on the United States to establish fraud by clear and convincing evidence. The United States contends that the instruction was erroneous because the statutory action[2] is controlled by equitable principles which require the plaintiff to prove his superior right to the refund.

It is well-settled law that the statutory penalty for fraud is remedial in nature and primarily is "a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud." Helvering v. Mitchell, 303 U.S. 391, 401, 58 S.Ct. 630, 634, 82 L.Ed. 917. It is equally well settled that the statutory action for refund of taxes illegally collected is in the nature of an action for money had and received and is governed by equitable principles. Stone v. White,

---

1. Except as to a portion of the tax deficiency assessed for 1945 and a $3,703.-96 deficiency assessed for 1942, but collected after the expiration of the period allowed for its collection, the taxpayer sought a refund of only the amounts paid as fraud additions.

2. 28 U.S.C.A. § 1346(a) (1).

301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265; Duffin v. Lucas, 6 Cir., 55 F.2d 786, certiorari denied 287 U.S. 611, 53 S.Ct. 14, 77 L.Ed. 531; Ryan v. Alexander, 10 Cir., 118 F.2d 744, certiorari denied 314 U.S. 622, 62 S.Ct. 72, 86 L.Ed. 500; Perry v. Allen, 5 Cir., 239 F.2d 107. From this, the United States argues, the taxpayer is not entitled to recover the fraud penalty which he has paid until he establishes that in equity and good conscience he is entitled to it, which requires that he affirmatively prove his superior right, including freedom from fraud. Every court which has considered the question has held against this contention. Carter v. Campbell, 5 Cir., 264 F.2d 930; Powell v. Granquist, 9 Cir., 252 F.2d 56; [3] Fairchild v. United States, 5 Cir., 240 F.2d 944; Hargis v. Godwin, 8 Cir., 221 F.2d 486; Duffin v. Lucas, supra.

▮▮▮▮ While conceding the effect of these decisions, the United States urges that they are based upon misconceptions of existing law and of legislative history and believes that there should be a fresh appraisal of the subject. With this we cannot agree. We think they follow the spirit of the long-accepted rule of law that one who asserts fraud has the burden of proving it by clear and convincing evidence. The taxpayer in his complaint alleged that he was free from fraud, but the initial accusation is in the Commissioner's assessment, which he may make without any requirement to disclose the basis for the charge. The requirement that the taxpayer pay the deficiency assessment, including the fraud penalty, before bringing action to contest its validity [4] should not relieve the Commissioner from the burden of proving the fraud charges which he makes. An allegation of fraud is a serious matter; it is never presumed and must be proved by clear and convincing evidence. Pacific Royalty Co. v. Williams, 10 Cir., 227 F.2d 49, certiorari denied 351 U.S. 951, 76 S.Ct. 847, 100 L.Ed. 1474; Koscove v. C.I.R., 10 Cir., 225 F.2d 85. In Davis v. C.I.R., 10 Cir., 184 F.2d 86, 87, 22 A.L.R. 2d 967, we said:

"Fraud implies bad faith, intentional wrong doing and a sinister motive. It is never imputed or presumed and the courts should not sustain findings of fraud upon circumstances which at the most create only suspicion."

To adopt the government's position in this case would, in effect, nullify these well-established principles in tax fraud actions and would permit the Commissioner to assess fraud penalties with or without substantial basis and with no obligation to prove them. It would create an unnecessary inconsistency between cases where a taxpayer elects to pay the deficiency and sue in the United States District Court for refund, and those where the taxpayer petitions the Tax Court for a redetermination of the deficiency, in which cases the burden of proving fraud is by statute on the Commissioner. [5]

The taxpayer, in his cross-appeal, contends that the trial court committed

---

3. In Powell v. Granquist, 252 F.2d at page 61, the Court said:
"We agree that fraud in this type of case must be established by clear and convincing proof. Rogers v. Commissioner, supra. Jemison v. Commissioner, 5 Cir., 1930, 45 F.2d 4; the burden to establish by the required quantum of evidence such fraud is upon the government. Ohlinger v. United States, 9 Cir., 1955, 219 F.2d 310; and this required standard may be satisfied by circumstantial evidence. Owens v. United States, D.C. Ark.1951, 98 F.Supp. 621, affirmed 8 Cir., 1952, 197 F.2d 450."

4. Flora v. United States, 357 U.S. 63, 78 S.Ct. 1079, 2 L.Ed.2d 1165, and 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623, on rehearing.

5. The 1939 Internal Revenue Code, applicable to the years here in question, provides in Section 1112, 26 U.S.C.A. § 1112 (Section 7454 of the 1954 Code, 26 U.S. C.A. § 7454), which appears in the chapter dealing with the Tax Court, that: "In any proceeding involving the issue whether the petitioner has been guilty of fraud with intent to evade tax, the burden of proof in respect of such issue shall be upon the Commissioner."

prejudicial error in refusing to strike the testimony of a witness and in giving and refusing to give certain instructions on the issue of fraud.

Prior to trial, taxpayer submitted written interrogatories to the United States, one of which asked if agents of the United States had taken or received "any written statements from any persons, other than the plaintiff and the defendant's agents, relating to or in any manner indicating that plaintiff had any intent to evade income taxes for the years 1942, '43, '44 and '45, by filing false and fraudulent income tax returns for any of said years * * *." The answer to this interrogatory was "No". The witness Eley was called by the United States and testified to conversations which he had with the taxpayer during the year 1945 wherein the taxpayer, in effect, admitted that he had not been paying all of his income tax prior to that year. On cross-examination Eley testified that during the year 1945 he had been interviewed by a revenue agent and had told him of these conversations. He further testified that the agent had taken down what he said but, insofar as he knew, he had not signed a statement. Attorneys for the taxpayer then called upon the government to produce the statement. A government attorney explained that he had in his possession no written statements of the witness but only interview summaries of a number of witnesses. The interview summary was offered to taxpayer's counsel, but he declined its admission into evidence,[6] and it is not in the record here.

■ Rule 33, Fed.Rules Civ.Proc., 28 U.S.C.A., contemplates that parties to an action shall furnish correct answers to relevant interrogatories properly submitted. The interrogatory in question requested information as to written statements of prospective witnesses. The United States did not construe the interview summaries to be written statements. Clearly, we think, an ordinary summary of a witness interview prepared by an agent after the interview, would not be a written statement of the person interviewed unless the document on its face purports to be such a statement or unless it appears that it had been examined by the person interviewed and acknowledged as his statement. In any event, we cannot say as a matter of law that the government's negative answer was incorrect or that it misled the taxpayer by depriving him of an opportunity to examine materials which he reasonably thought were requested by the interrogatory.

■ Over the objection of the taxpayer, the court instructed the jury that the fraud assessment is civil and not penal in nature; that "it was not imposed by Congress as a punishment to the taxpayer"; that "the purpose of this additional assessment of 50% of the amount of the tax deficiency is to reimburse the Government for the heavy expense of investigation, and the loss

---

6. In connection with this matter, the following colloquy took place between the Court and the attorneys:

"Mr. Fleming: Your Honor, in this case, in the interrogatory propounded, we have called upon the Government to produce any written statements concerning this—(Interrupted)

"The Court: I know.

"Mr. Fleming: The witnesses in this case. They have not supplied us with that, it is a written statement, whether signed or not.

"The Court: Well, I should think it should be signed. Do you have a written statement?

"Mr. Biggins: No, Your Honor, we have not. We do have interview summaries, we have got interview summaries with any number of witnesses, but nothing signed. The agent talks with the man, it is re-capped up. If he wants the interview summary in evidence, we will be happy to place it.

"Mr. Fleming: We don't want your agent interview summary, no.

"Mr. Biggins: That is why we didn't supply it.

"(Whereupon, an off the record conference was held between counsel.)"

Mr. Fleming was one of the attorneys for the taxpayer and Mr. Biggins was one of the attorneys representing the Department of Justice.

resulting from the taxpayer's fraud." The instruction was lifted from statements in Helvering v. Mitchell, supra, stating the purpose of the fraud penalty. While it is true that instructions should be predicated on the evidence in a particular case, and should not deal with general or abstract propositions not immediately connected with the facts,[7] this instruction was a correct statement of the purpose of the statute, and when considered with the instructions as a whole, could not be prejudicial to the taxpayer.

The taxpayer objected to an instruction advising the jury it was free to consider as evidence of intent to defraud a showing that the taxpayer, over a course of years, had received substantial amounts of income which he had unaccountably failed to report.[8] It is contended that the result of the court's language shifted to the taxpayer the burden of disproving fraud and permitted the jury to find fraud upon a presumption of the correctness of the Commissioner's determination of tax. We can observe no such implication in the instruction. It was followed by other instructions which stated that the taxpayer's intention should be determined from all the surrounding facts and circumstances at the time he made and prepared his tax returns for each of the years involved. The jury was told it should take into consideration the education or lack of education of the taxpayer, his knowledge of accounting and bookkeeping, his experience in filing income tax returns, his experience in the general business affairs of the community, the type of business records he kept, and any other evidence which indicated that he did or did not have actual knowledge that each return was fraudulent. The court then advised the jury that negligence, carelessness, or ignorance alone is insufficient to establish fraudulent intent; that intent to defraud cannot be implied or presumed merely because all receipts of money or property were not included in a tax return, or because improper deductions were claimed, but that such evidence may be considered with other circumstances in determining fraud. The jury was also instructed that if it found from the evidence that the taxpayer made a full and honest disclosure of information sufficient for the preparation of a correct tax return to competent persons employed to prepare the same, and did all that a reasonably prudent person would do under such circumstances, the return would not be fraudulent and filed with intent to evade taxes. In addition to advising the jury that the burden was on the United States to prove fraud by clear and convincing evidence, the jury was instructed that "fraud implies bad faith. It means actual, intentional wrongdoing with the specific intent and purpose at the time, to file an incorrect tax return, to evade the payment of the tax believed to be owing."[9]

The instruction objected to does not advise the jury that failure to report income in substantial amounts over a period of years, standing alone, would be sufficient to establish fraud. Its language, when considered with the other instructions, is not such as would indicate that the Commissioner's deficiency assessment is presumed to be correct so as to shift the burden to the taxpayer to prove his freedom from fraud. Continued failure to report income is to be considered only with all the other evidence in the case

---

7. Decker v. Korth, 10 Cir., 219 F.2d 732, certiorari denied 350 U.S. 830, 76 S.Ct. 61, 100 L.Ed. 740.

8. This instruction reads as follows:
   "To establish fraud by direct proof of intention, is seldom possible. Usually it must be gleaned from a number of transactions, and the conduct of the taxpayer relative thereto. Where it is shown by the evidence that, over a course of years, a taxpayer has received income in substantial amounts, but has failed to report these incomes, and there is no tenable explanation for the failure, you may consider this as evidence of fraud."

9. This is substantially the language used in Davis v. C.I.R., supra.

in determining the issue of fraud,[10] and the combined effect of the instructions was to so advise the jury.

. The instructions have been considered as a whole, and without further discussion, we think the court was particularly careful to instruct the jury that the burden was on the government to prove fraud by clear and convincing evidence, and that fraud meant actual wrongdoing with intent to evade taxes. We find nothing prejudicial to the taxpayer either in the giving or the refusal to give any instruction.

Affirmed.

10. In Koscove v. C. I. R., 10 Cir., 225 F. 2d 85, 87, we said:
"But here we have gross understatement of income without any plausible ex-cuse or explanation therefor. This has been held evidence of fraud." (Citations omitted.)