**Wesley O. PADDOCK, Appellee,**

v.

**UNITED STATES of America,
Appellant.**

**No. 356, Docket 26205.**

United States Court of Appeals
Second Circuit.

Argued May 13, 1960.

Decided June 29, 1960.

Stewart F. Hancock, Jr., Syracuse, N. Y. (Robert V. Hunter, Hancock, Dorr, Ryan & Shove, Syracuse, N. Y., on the brief), for appellee.

Charles K. Rice, Asst. Atty. Gen. (Theodore F. Bowes, U. S. Atty., Syracuse, N. Y., Kenneth P. Ray, Asst. U. S. Atty., I. Henry Kutz, Grant W. Wiprud, and Arthur L. Biggins, Attys., Dept. of Justice, Washington, D. C., on the brief), for appellant.

Before CLARK, MOORE and FRIENDLY, Circuit Judges.

FRIENDLY, Circuit Judge.

The question is whether, in a suit by a taxpayer against the United States under 28 U.S.C. § 1346(a) (1) for the recovery of income taxes and penalties alleged to have been illegally and erroneously assessed and collected, the burden of proof with respect to the 50% addition to the deficiency imposed for "fraud with intent to evade tax," Internal Revenue Code of 1939, § 293(b), 26 U.S.C. § 293 (b), is upon the taxpayer-plaintiff or upon the government-defendant. The government's contention that the burden rests on the taxpayer is founded on legal analysis and legislative history; taxpayer's contention that the burden rests on the government relies primarily upon authority and on what taxpayer asserts to be good sense. We believe the considerations advanced by taxpayer to be the weightier and therefore affirm the judgment of the District Court.

Paddock did not file income tax returns for any year from 1947 through 1951. In March 1952, the District Director of Internal Revenue for the Northern District of New York assigned an agent to audit Paddock's income tax liability. Paddock thereupon filed returns reporting income for 1949 through 1951 in amounts which, in the light of the claimed exemptions, resulted in no tax liability. After completion of the audit, the Commissioner made a determination showing total deficiencies for tax, penalties and interest of $3,175.77 for the five years. Of this $1,386.04 consisted of penalties, and $779.37 comprised the fraud penalty. Paddock paid the sum so assessed.

Later Paddock brought an action against the United States in the District Court for Northern New York under 28 U.S.C. § 1346(a) (1) to recover the entire amount so paid. The parties stipulated the facts recited above and certain others. Among these were that the Commissioner had erroneously included $2,700 as income in 1950 and 1951; that correction for this error would reduce the total deficiency by $1,106.64 to $2,069.13, including $867.97 of penalties of which the fraud penalty was $529.84; and that the only issue remaining for determination was whether plaintiff was entitled to a refund of this latter amount. The stipulation also recited that the occupation set forth by Paddock on his returns was "Minister"; that he was not an ordained minister but served as pioneer-missionary for the Jehovah Witnesses, for which he received no compensation; that the sources of his income were rents and fees for services as a tax consultant; that plaintiff offered no proof to contest the total amount of his adjusted gross income as corrected but that "He does deny, however, that he has ever failed to report any of his income deliberately with intent to avoid payment of his proper income tax." Neither the taxpayer nor the government offered any other evidence, and the question of burden of proof was thus sharply raised. The government moved for a directed verdict save with respect to the conceded error of $1,106.-64; plaintiff moved for a directed verdict in that amount plus the fraud penalty of

$529.84. The court granted the plaintiff's motion and denied the government's and subsequently denied a motion by the government for a new trial. The government appeals.

Section 1112 of the 1939 Internal Revenue Code, 26 U.S.C. § 1112, which is in Chapter 5, entitled "The Tax Court of the United States," provides that "in any proceeding involving the issue whether the petitioner has been guilty of fraud with intent to evade tax, the burden of proof in respect of such issue shall be upon the Commissioner." This provision first came into the law in the Revenue Act of 1928, c. 852, § 601, 45 Stat. 791, discussed below. Because of its inclusion in Chapter 5 and its reference to "the Commissioner," § 1112 does not literally apply to refund suits.

The government supports its argument that a taxpayer maintaining such a suit to recover a fraud penalty has the burden of showing the absence of fraud, by an impressive legal analysis: A suit under 28 U.S.C. § 1346(a)(1) to recover taxes alleged to have been erroneously or illegally assessed or collected "is the lineal successor of the common count in *indebitatus assumpsit* for money had and received," Stone v. White, 1937, 301 U.S. 532, 534, 57 S.Ct. 851, 852, 81 L.Ed. 1265. In such an action "The claimant, to prevail, must show that the money was received in such circumstances that the possessor will give offense to equity and good conscience if permitted to retain it. * * * The question no longer is whether the law would put him in possession of the money if the transaction were a new one. The question is whether the law will take it out of his possession after he has been able to collect it." Atlantic Coast Line R. R. v. Florida, 1935, 295 U.S. 301, 309–310, 55 S.Ct. 713, 716, 79 L.Ed. 1451. Since the government will not be unjustly enriched through retention of the penalty if the taxpayer has in fact been guilty of fraud, a court should not order the government to restore this money unless the taxpayer carries the burden of persuading the court of his freedom from fraud. In addition to these considerations peculiarly applicable to the action for money had and received, the government says the general rule is that the plaintiff has the burden of proof with respect to all elements of his claim, citing Johnson v. Johnson, 1948, 229 N.C. 541, 50 S.E.2d 569, 572, and other authorities. The only exception is where "all the proof on the subject is within the control of the defendant who, if the negative is not true, can disprove it at once," Great Western R. R. v. Bacon, 1863, 30 Ill. 347, 352 cited with approval in United States v. Denver & Rio Grande R. R., 1903, 191 U.S. 84, 92, 24 S.Ct. 33, 48 L.Ed. 106. Since the issue with respect to the fraud penalty concerns the taxpayer's own acts and mental state, the case falls within the rule rather than the exception.

The government argues that the history of the statute placing the burden of proof as regards the fraud penalty upon the Commissioner in proceedings in the Tax Court confirms the government's position that the burden of proof in a refund suit is upon the taxpayer. The Board of Tax Appeals, the predecessor of the Tax Court, was created by § 900 of the Revenue Act of 1924, c. 234, 43 Stat. 336.* A new § 907(a) added to that Act by § 1000 of the Revenue Act of 1926, c. 27, 44 Stat. 107, 26 U.S.C.A.Int. Rev.Acts, page 307, provided that the proceedings of the Board "shall be conducted in accordance with such rules of practice and procedure (other than rules of evidence) as the Board may prescribe and in accordance with the rules of evidence applicable in courts of equity of the District of Columbia." The Board prescribed a general rule of practice that "The burden of proof shall be upon the petitioner, except that in respect of any new matter of fact pleaded in his answer, it shall be upon the respondent," and applied this to the fraud penalty, e. g., Budd v. Commissioner, 3 Cir., 1930, 43 F. 2d 509; S. W. Parish, 1928, 9 B.T.A. 1236, 1241. By § 601 of the Revenue Act

* 26 U.S.C. § 1100.

of 1928, c. 852, 45 Stat. 872, 26 U.S.C.A. Int.Rev.Acts, page 455, Congress reversed this *in futuro* by adding a new sentence to § 907(a) to read as follows:

"In any proceeding involving the issue whether the petitioner has been guilty of fraud with intent to evade tax, where no hearing has been held before the enactment of the Revenue Act of 1928, the burden of proof in respect of such issue shall be upon the Commissioner."

The Senate Committee report, Sen.Rep. No. 960, 70th Cong., 1st Sess., p. 38, explained this amendment as follows:

"*Burden of proof in fraud cases.*— In all proceedings before the Board of Tax Appeals under the present law it is provided that the burden of proof shall be borne by petitioners. This is true even though the Commissioner in his deficiency letter raises the issue that the petitioner has been guilty of fraud. Proceedings before the Board involving that issue in some respects resemble penal suits. The committee feels that the Commissioner should be placed in the position of party plaintiff and compelled to carry the burden of proving fraud whenever it is an issue in the case. As to all other issues, however, the burden of proof remains on the petitioners, except to the extent provided in section 602."

In cases where the hearing had been held prior to enactment of the Revenue Act of 1928, the Board continued to state that the burden was upon the petitioner to show the returns were not false and fraudulent. Desmond's, Inc., 1929, 15 B.T.A. 738.

The lesson which the government would have us draw from this is that the Board's placing the burden upon the petitioner in a fraud case must have been based upon a belief that this would have been the rule of evidence applicable in courts of equity in the District of Columbia or, presumably, elsewhere, and that the 1928 amendment sanctioned that view by changing the rule solely in proceedings in the Board and there only when the hearing was held after its enactment.[1] However, an equally plausible inference is that Congress thought the Board had erred in using the power conferred by § 907 so as to place the burden on the taxpayer, as Budd v. Commissioner, supra, later held; that Congress limited § 907(a) to proceedings before the Board because that "was the mischief and defect" which it "hath resolved and appointed to cure," Haydon's Case, 3 Coke 7a, 76 Eng.Rep. 637 (1584); and that Congress limited its explicit direction to post-enactment hearings for reasons of administrative convenience, leaving those few taxpayers who had grievances as a result of earlier errors to seek relief in the courts.

Taxpayer opposes the government's argument with the monolithic authority of

---

[1]. The government also relies, although much less heavily, on § 7422(e) of the 1954 Code, 26 U.S.C. § 7422 dealing with cases where a taxpayer who has brought a refund suit in the district court receives a deficiency notice as to the tax which is the subject matter of the suit. He may then file a petition for re-examination with the Tax Court whereupon the district court loses jurisdiction to the extent that the Tax Court acquires it; or he may choose to proceed with the refund suit, in which event the government may counterclaim or intervene in the district court. If the government does this, § 7422(e) provides that "the taxpayer shall have the burden of proof with respect to the issues raised by such counterclaim or intervention of the United States except as to the issue of whether the taxpayer has been guilty of fraud with intent to evade tax." Standing alone this statute would be quite as consistent with the taxpayer's contention that the burden of proof with respect to fraud in a refund suit is normally with the government as with the government's contrary contention. The government notes the statement in the House Committee report that the purpose of the insertion was to bring it about that "upon such counterclaim or intervention the taxpayer will have the same burden of proof as he would bear as if he had appealed the case to the Tax Court," H.R.Rep. No. 1337, 83rd Cong. 2d Sess. p. A 431; we do not find the inference from this particularly compelling.

seven courts of appeals. Budd v. Commissioner, 3 Cir., 1930, 43 F.2d 509; Jemison v. Commissioner, 5 Cir., 1930, 45 F.2d 4; Griffiths v. Commissioner, 7 Cir., 1931, 50 F.2d 782; Duffin v. Lucas, 6 Cir., 55 F.2d 786, certiorari denied 1932, 287 U.S. 611, 53 S.Ct. 14, 77 L.Ed. 531; Ohlinger v. United States, 9 Cir., 1955, 219 F.2d 310; Hargis v. Godwin, 8 Cir., 1955, 221 F.2d 486; Carter v. Campbell, 5 Cir., 1959, 264 F.2d 930; and United States v. Thompson, 10 Cir., 1960, 279 F.2d 165, as well as a number of district courts. The Budd case [43 F.2d 512] held that the pre-1928 rule of the Board of Tax Appeals placing the burden of proof upon the taxpayer even in fraud cases ran counter to "the general rule of evidence * * * that he who alleges fraud must prove it" and thus "was made without authority and is contrary to law," and that the 1928 act corrected this unlawful assertion of power and was "simply declaratory of what the law was." The government criticizes this decision, claiming that there was nothing to show that the procedure established by the Board was unlawful and that if Congress had deemed it so, Congress would hardly have limited the amendment to cases in which hearings had not been held when the 1928 act became effective; we have discussed this argument above. Jemison v. Commissioner, likewise dealing with a case heard before the Board of Tax Appeals prior to enactment of the 1928 Act held the burden of proof of fraud to rest upon the Commissioner; it did this on the basis of general principles with respect to assertions of fraud, without considering the 1928 statute and in reliance on F. Vitelli & Son v. United States, 1919, 250 U.S. 355, 39 S.Ct. 544, 63 L.Ed. 1028, which the government seeks to distinguish on the basis that a contrary ruling on burden of proof in that case would have rendered meaningless the one-year limitation upon the conclusiveness of the payment of duties "in the absence of fraud" in § 21 of the Act of June 22, 1874, 18 Stat. 186, 190. Grif-

fiths v. Commissioner, again dealing with a fraud case heard by the Board of Tax Appeals before the effective date of the 1928 act, held the burden on the Commissioner on the authority of Jemison, without discussing the language of the amendment. Duffin v. Lucas, the first of these cases dealing with a refund suit, made no reference to the 1928 act; the government seeks to distinguish it both on this basis and as predicated on views with respect to the nature of the fraud penalty rendered obsolete by Helvering v. Mitchell, 1938, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917. These four decisions, which the government claims to be ill-reasoned, lie at the basis of the statement in Ohlinger v. United States, like Duffin v. Lucas a refund suit, that "section 1112, Title 26 U.S.C.A. is a statutory declaration of what has always been the law, not only in the Tax Court, but in the District Court as well," 219 F.2d at pages 311–312, and the still more recent decisions in Hargis v. Godwin and Carter v. Campbell,[2] which, in turn, underlay United States v. Thompson, all refund suits.

We see no sufficient practical basis for a difference in the rule as to burden of proof in a taxpayer's attack upon a fraud penalty by petition to the Tax Court and in a suit for refund under 28 U.S.C. § 1346(a) (1). In either the taxpayer has the burden on most issues, in the Tax Court because he is attacking an administrative determination of presumed correctness and in a refund suit because he must show it would be inequitable for the government to retain monies that he has paid. If this general rule as to burden of proof is subject to an exception when the issue relates to fraud, as Congress has directed it to be in the Tax Court for the past 32 years, why should it not be in a refund suit? The government answers that a petition in the Tax Court must be filed within 90 days after the notice of deficiency, Internal Revenue Code of 1939, § 272(a), 26 U.S.C.A. § 272(a), when the Commissioner may be expected still to have his evidence available, where-

---

2. The government disputes the accuracy of the statement in Carter v. Campbell, 5 Cir., 264 F.2d at page 938, that "the

Government does not question that the same burden is on it in either forum."

568

as a taxpayer may wait two years before filing a refund claim and two years after disallowance before filing a refund suit, §§ 322(b) (1), 3772(a). If there must be a difference in burden of proof as between the two types of proceeding, this would be persuasive that the easier rule on the taxpayer should apply in the Tax Court and the harder one in a refund suit; but it is scarcely enough to show that Congress intended different rules to apply. Whether the decisions against the government are put on the basis that the Board of Tax Appeals had erred in its initial view that equity would place the burden of disproving fraud upon the taxpayer or on the ground that when Congress established a statutory rule in 1928, it expressed "a change in the policy of the law" although using words referring only to "the specific cases most likely to occur to the mind," Johnson v. United States, 1 Cir., 1908, 163 F. 30, 32, we think they have reached the right result. It should not be hard to secure legislative correction of the alleged judicial error if the courts have in fact misread the Congressional purpose and the consequences to the revenue are as serious as the government says.

Judgment affirmed.