Charles Oran MENSIK and Mary Mensik, Petitioners,

v.

COMMISSIONER OF INTERNAL REV-ENUE, Respondent.

No. 14167.

United States Court of Appeals Seventh Circuit.

Feb. 10, 1964.

Rehearing Denied March 17, 1964.

Edward J. Calihan, Jr., Anna R. Lavin, Chicago, Ill., Kinsey T. James, Bethesda, Md., for petitioners.

Louis F. Oberdorfer, Asst. Atty. Gen., Carolyn R. Just, Lee A. Jackson, Melva

M. Graney, Attys., U. S. Dept. of Justice, Washington, D. C., for respondent.

Before HASTINGS, Chief Judge, and SCHNACKENBERG and SWYGERT, Circuit Judges.

HASTINGS, Chief Judge.

This case is before us on petition of Charles Oran Mensik and Mary Mensik, his wife, for review of a decision of the Tax Court of the United States. Mensik v. Commissioner of Internal Revenue, 37 T.C. 703 (1962).

The Commissioner of Internal Revenue, respondent, assessed petitioners a tax deficiency of $547,967.55 for the taxable year ending December 31, 1956, and a fifty per cent penalty for fraud of $273,983.78, as provided in Section 6653(b) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 6653(b).[1]

The decision of the Tax Court ordered petitioners to pay $201,022.33 income tax deficiency and $100,511.17 fraud penalty.

The Tax Court's preface to its opinion concisely states the case by setting out the following general findings of fact and holdings:

"1. Petitioner [Charles Oran Mensik] as managing officer, president, and chairman of the board of directors of the City Savings Association, employed Melvin Building Corporation to do remodeling of the building of City Savings and in payment therefor caused City Savings to make a gross overpayment for the work actually done, which overpayment was advisedly arranged by petitioner. At or near various dates on which the final payments were being made by City Savings to Melvin, petitioner arranged with Melvin to deliver to him various substantial sums of money as purported loans to him and one Orville Hodge, then State auditor for the State of Illinois. The respondent in his deter-

mination of deficiency determined that to the extent of $176,312.50 the moneys so paid over to petitioner constituted income to him. By amended answer, it is his claim that this amount should be increased to $206,330.56. *Held*, that some part, if not all, of the overpayment made by City Savings to Melvin was thereafter paid over by Melvin to petitioner and was income to him. *Held, further*, that petitioner has failed to prove that the income so received was in a lesser amount than determined by respondent in his determination of deficiency. *Held, further*, that the respondent has failed to carry his burden of proving that the income so received by petitioner was in an amount greater than determined by him in his determination of deficiency.

"2. In October of 1954, Melvin Building Corporation entered into a contract with petitioner's sister for the purchase of 13 lots on West Jackson Boulevard in Chicago, and made a substantial cash payment on the purchase price. The entries on its books reflected only the purchase of lots 2 to 13, inclusive. Early in 1956, Melvin began construction of a building on some or all of the lots including lot 1, and received a construction loan from City Savings therefor. On May 25, 1956, after substantial amounts had been advanced on the loan and the construction was under way, Melvin issued a check for $10,000 to petitioner and entered the payment on its books as payment for lot 1. On March 11, 1957, petitioner, by check, made a payment of $10,000 to Melvin, which check Melvin credited to its notes receivable account. It is petitioner's testimony and claim that the $10,000 paid in March of 1957 was a repayment of the $10,000 received in May of 1956,

---

1. "§ 6653. Failure to pay tax
*     *     *     *     *

"(b) Fraud.—If any part of any underpayment * * * of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. * * *"

the repayment being made after discovery that Melvin already owned lot 1. No change in the application of the payment of $10,000 in May of 1956 or in receipt of $10,000 in March of 1957 has ever been made on Melvin's books. The respondent determined that by reason of the receipt of the $10,000 in 1956, petitioner realized income in that amount. *Held,* that petitioner has failed to show by convincing or persuasive proof that the respondent erred in his determination.

"3. In 1956, petitioner caused a check to be drawn on a bank account of City Savings Association for $6,-800. The payee shown was Commercial Broadcasters and the basis for the drawing of the check was an invoice made out on a form of Commercial Broadcasters. The invoice was not the invoice of Commercial Broadcasters and Commercial Broadcasters never received the check. Commercial Broadcasters did not arrange a program or programs such as were described on the bogus invoice. The respondent determined that by reason of the $6,800 payment by City Savings, petitioner realized income in that amount. *Held,* that petitioner has failed to prove that the respondent erred.

"4. Through his relations with City Savings and with Melvin and other institutions with which he occupied dominant positions, petitioner regularly carried on varied business operations, which included the purchase and sale of real estate. *Held,* that the parcels of real estate sold by petitioner in 1956 were sold to customers in the ordinary course of his business, and that the gain therefrom was not capital gain, but ordinary income. *Held, further,* that the income derived from the purchase of real estate tax certificates and their subsequent redemption was ordinary income.

"5. During 1956 petitioner, in the course of his business, sold in-surance policies to his employees, to employees of City Savings, and to relatives and friends, on which sales he waived his commissions in favor of the purchasers. The respondent determined that petitioner realized income in the amount of the commissions waived. *Held,* that respondent did not err in his determination.

"6. In June of 1955, petitioner organized the First Guarantee Savings Association, of which he owned 98.8 percent of its stock, and the Chicago Guarantee Savings Association, of which he owned 98.6 percent of the stock. On July 1, 1955, he executed written instruments with each of the associations, reciting that he agreed to spend $55,000 in advertising each such association during the period July 1, 1955, and June 30, 1956. In each instrument it was recited that the association would recommend and give all of the insurance of its members and its own to petitioner for a period of 5 years, and for an additional 5 years, if $100,000 in commissions was not received by petitioner during the first 5 years. Petitioner expended $17,295.14 in 1955 and $32,076.14 in 1956 for advertising of First Guarantee, and $18,374.84 in 1955 and $36,284.84 in 1956 for advertising Chicago Guarantee. In 1956 he deducted as advertising expenses of his operations carried on under the name of City Insurance Agency, $8,951.93, which was the same in amount as the sum of $5,139.81 received in 1956 in the form of commissions on insurance business originating with First Guarantee and $3,812.12 on business originating with Chicago Guarantee. *Held,* that the amounts expended by petitioner in 1955 and 1956 in advertising the two savings associations represented capital contributions by him to the associations.

"7. In June of 1955, when Chicago Guarantee Savings Association was organized, petitioner paid $9,-

000 as rent for 20 months for space to be occupied by the association, for $2,000 of which he was reimbursed. In reporting his income for 1955, petitioner deducted as rent $2,700 of the $7,000 net balance, and in his 1956 return deducted the remaining $4,300. *Held,* that the $7,000 so expended by petitioner in June of 1955 was a capital contribution by him to Chicago Guarantee.

"8. In September of 1956, petitioner received premium refunds of $6,166.42 from the insurer of the buildings of First Guarantee Savings Association and Chicago Guarantee Savings Association, this insurance having been sold by petitioner to the associations in the course of his personal business operations. The amounts so received by petitioner were retained by him and have never been paid over to the said associations. *Held,* that the respondent did not err in determining that petitioner realized income in 1956 in the amount of insurance premiums so refunded and received by him." 37 T.C. at 703–705.

The Tax Court then follows with nineteen pages of particularized findings of fact in support of the above general findings. Id. 37 T.C. at 706–724. These findings are incorporated in this opinion by reference thereto.

Reference is further made to the Tax Court's extended opinion by Judge Turner. Id. 37 T.C. at 724–754.

■ On appeal, these findings of the Tax Court must stand unless shown to be clearly erroneous. Commissioner v. Duberstein, 363 U.S. 278, 291, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960); Interstate Drop Forge Company v. Commissioner of Internal Revenue, 7 Cir., 326 F.2d 743 (January 7, 1964).

■ Petitioners contend "that the Tax Court's findings of fact and law constitute erroneous legal conclusions reversible as a matter of law." After consideration of the briefs, oral argument of counsel, the opinion of the Tax Court and the record as a whole, we hold that there

was substantial evidence to support the Tax Court's findings and that the Tax Court did not err in holding petitioners liable for income tax deficiencies in the amount of $201,022.33. Zeddies v. C.I.R., 7 Cir., 264 F.2d 120, 126 (1959), cert. denied, 360 U.S. 910, 79 S.Ct. 1295, 3 L. Ed.2d 1260, rehearing denied, 361 U.S. 855, 80 S.Ct. 44, 4 L.Ed.2d 94.

■ Petitioners also contend that the Tax Court erred in finding that "a part of the deficiency is due to fraud" and assessing a fifty per cent penalty. Under Section 6653(b) of the Code, supra n. 1, the fifty per cent penalty may be assessed against the entire deficiency, even though the finding of fraud relates only to part of the deficiency. The burden of proving fraud is on the Commissioner. Paddock v. United States, 2 Cir., 280 F.2d 563, 565 (1960).

■ Civil fraud need not be proved beyond a reasonable doubt, but it must be established by clear and convincing evidence. Spies v. United States, 317 U. S. 492, 495, 63 S.Ct. 364, 87 L.Ed. 418 (1943); Zeddies v. C.I.R., 7 Cir., 264 F. 2d at 127; Kurnick v. Commissioner of Internal Revenue, 6 Cir., 232 F.2d 678, 681 (1956).

■■ The question of fraud is one of fact and the Tax Court's finding is entitled to finality unless it is clearly erroneous. Bodoglau v. Commissioner of Internal Revenue, 7 Cir., 230 F.2d 336, 341 (1956); Int.Rev.Code of 1954, § 7482. We find convincing evidence in the record as a whole to support the finding of fraud. We hold that the Tax Court did not err in assessing a fifty per cent penalty on the entire tax deficiency. 37 T. C. at 752–754.

Petitioners further contend that the Tax Court twice abused its discretion in the trial of the case.

■ The Tax Court, over objection of petitioners, granted the Commissioner's motion for leave to file an amendment to his answer to petitioners' petition. The amendment alleged facts concerning an additional item which supported the Commissioner's determination of fraud. Pe-

titioners contend that they were not given sufficient time to meet this allegation.

"The [Tax] Court may at any time during the course of the trial on the merits grant a motion of either party to amend its pleadings to conform to the proof * * *." Tax Court Rule 17(d). C.I.R. v. Finley, 10 Cir., 265 F.2d 885, 888 (1959), held that this rule allowed amendment at any time before a final decision, and held that an amendment was proper even though made several months after the taking of testimony. In the present case, the amendment was filed *prior to trial.* We hold that the Tax Court's allowance of the Commission's motion to amend was a proper exercise of discretion and petitioners had sufficient opportunity to defend this additional allegation of fraud.

■■ The second abuse of discretion asserted by petitioners was the Tax Court's denial of petitioners' motion for rehearing. An exercise of discretion by the Tax Court in denying a motion to reopen a case will not be reversed on appeal unless there is a showing of extraordinary circumstances. ARC Realty Company v. C.I.R., 8 Cir., 295 F.2d 98, 107 (1961). We have carefully examined petitioners' motion and the three accompanying affidavits. It is our conclusion that no circumstances are demonstrated which show an abuse of discretion by the Tax Court.

We have deemed it unnecessary to engage in a detailed statement of the evidence in this case, in view of our reference to the decision of the Tax Court. It is sufficient for us to say that based on our consideration of the record as a whole, with deference to the trier of fact in the determination of matters of credibility and weight to be assigned to various items of evidence, we are convinced that the deficiencies assessed and the finding of fraud have ample support in the record and must be affirmed. We find no prejudicial error therein.

The decision of the Tax Court is in all respects affirmed.

Affirmed.