**RUIDOSO RACING ASSOCIATION, INC., Petitioner-Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**No. 72–1355.**

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Jan. 9, 1973.

Decided April 4, 1973.

Edward Heilbronner, Washington, D. C. (Edward L. Kane, Haskins, Lewis, Nugent & Newnham, La Jolla, Cal., and Sparber, Zemel, Roskin & Heilbronner, on the brief), for petitioner-appellant.

Richard S. Halberstein, Atty., Tax Div., Dept. of Justice (Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks and Elmer J. Kelsey, Attys., Tax Div., Dept. of Justice, on the brief), for respondent-appellee.

Before BREITENSTEIN, McWILLIAMS and BARRETT, Circuit Judges.

BREITENSTEIN, Circuit Judge.

For the taxable years 1959, 1960, and 1961, the Commissioner of Internal Revenue determined that the total federal income tax deficiencies of Ruidoso Racing Association were $417,000 and that the fraud penalties under § 6653(b) of the Internal Revenue Code of 1954 were $208,000. The Tax Court sustained the Commissioner, see T.C.Memo. 1971–194, and the taxpayer has appealed.

Taxpayer is a New Mexico corporation which during the years in question operated a horse racetrack at Ruidoso Downs, New Mexico. At that time its majority stockholder and chief executive officer was Eugene V. Hensley who formulgated policy, maintained complete control of the corporation records, and ran the corporation's day-to-day business. Hensley's skill as a racetrack promoter and operator was not equalled by his skill in keeping records or by his ability to comply with federal income tax laws. He was convicted on four counts of income tax evasion and four counts of false returns, all based on his 1959 and 1960 returns and the taxpayer's returns for the same years. The conviction was affirmed. Hensley v. United States, 10 Cir., 406 F.2d 481. In that opinion we pointed out the use of false invoices and the deduction as business expenses of gratuities to friends and relatives. 406 F.2d at 483, 484. The findings of the Tax Court in the instant case outline with meticulous care the many transactions and occurrences which formed the basis for the Commissioner's determination and the procedures which the Commissioner used in reaching his results. We will be concerned only with those details necessary to an understanding of this opinion.

The taxpayer acknowledges that improper deductions were claimed on its tax returns as a result of the manipulations of Hensley and the false invoices secured by him. The first question relates to whether the Tax Court correctly found that there was a fraudulent intent which would toll the three-year statute of limitations, see § 6501(c)(1) of the Internal Revenue Code of 1954, and which would justify the imposition of the § 6653(b) penalties.

The Commissioner has the burden to prove fraud for each year by clear and convincing evidence. United States v. Thompson, 10 Cir., 279 F.2d 165, 167. It is not necessary that the Commissioner prove the precise amount of the underpayment resulting from fraud but only that "any part" thereof is attributable to fraud. Int.Rev.Code of 1954, § 6653(b), and Estate of W. Y. Brame, 25 T.C. 824, 831, aff'd per curiam, 5 Cir., 256 F.2d 343.

The determinative issue is whether the fraud of Hensley may be imputed to the corporation. A corporation is not absolved from liability for

the fraudulent acts of an agent by the fact that the agent derived personal benefit therefrom. Gleason v. Seaboard Air Line Ry., 278 U.S. 349, 353, 357, 49 S.Ct. 161, 73 L.Ed. 415; Auerbach Shoe Co. v. Commissioner, 1 Cir., 216 F.2d 693, 697. The pertinent questions are (1) whether the corporate agent so controlled the corporation that the corporate entity is destroyed and the corporation becomes the individual's alter ego and (2) whether the agent was acting in behalf of and not against the corporation with the result that the corporation benefited from his fraudulent acts. Asphalt Industries, Inc. v. Commissioner, 3 Cir., 384 F.2d 229, 234; and Botwinik Brothers of Mass., Inc. 39 T.C. 988, 996. If either (1) or (2) applies, the fraud of the agent may be imputed to the corporation.

■ During the years in question, Hensley owned or controlled 62% of taxpayer's stock, was a member of its board of directors, and was its chief executive officer. Regardless of Hensley's potential control of the corporation, practical restraints inhibited the exercise of that control. He was only one of three members of the board of directors. The New Mexico Racing Commission had ordered him to reduce his stock holdings below 40%. His full exercise of control might well have jeopardized taxpayer's relations with the Racing Commission. His potential for taking money out of the corporation was more limited than in the case of a sole stockholder. About 40% of any dividend would go to other stockholders. Cf. Federbush v. Commissioner, 2 Cir., 325 F.2d 1, 2. In the circumstances we are not faced with an alter ego situation.

■ The question, then, is whether the taxpayer benefited from Hensley's fraudulent acts. At the outset we reject the argument that benefit is shown by the financial success of the corporation under Hensley's stewardship and that the corporation condoned Hensley's fraudulent acts. The issue is whether

Taxpayer urges that no fraud may be found for the year 1961 because the taxpayer filed a "clean return" for that year. The taxpayer sought to avoid carrying Hensley's fraud into the 1961 return by instructing its accountant to perform a thorough audit for that year. those acts resulted in a tax benefit to the corporation.

■■ A tax benefit could arise in two ways, understatement of income and overstatement of business expense deductions. With regard to the first, the Tax Court found that the taxpayer's sales of beverages, not recorded on its books or records or reported on its income tax returns, were: 1959—$73,894.78; 1960—$90,340.20; and 1961—$71,334.26. These sales arose from the taxpayer's operation of two bars. Taxpayer showed that on occasion it provided free drinks to newsmen, television and radio people, celebrities, horseowners, and big bettors, but it maintained no record of the amount of beverages which it provided gratis. We will return later to the question of liquor sales. It is enough to say at this time that the failure to report bar income reduced total income and, hence, produced a tax benefit for the corporation. Although mere understatement of income does not establish fraud, James Nicholson, 32 B.T.A. 977, 989, aff'd, 8 Cir., 90 F.2d 978, and fraud with intent to evade tax must be affirmatively established, United States v. Thompson, 10 Cir., 279 F.2d 165, 167, the omission of the bar receipts from income is a factor which may not be disregarded in this case.

Business expenses were increased through the use of false invoices and fictitious record entries. In considering this phase of the case we are not concerned with items which benefited Hensley, his relatives, and his friends and which were improperly charged to, and paid by, the corporation. The pertinent items include the false enhancement of operational and administrative expense during each of the three years, the

treatment of purchase of capital assets as rental thereof, and the expensing of building supplies and labor used for capital construction. As to the last item, taxpayer says that it results from Hensley's lack of accounting understanding and ability, but we are not impressed. The difficulty is that the accountant told the IRS that there was nothing he could do about false invoices.

The taxpayer relies heavily on Asphalt Industries, Inc. v. Commissioner, 3 Cir., 384 F.2d 229, and Botwinik Brothers of Mass., Inc., 39 T.C. 988. In Asphalt Industries, the company stock was owned equally by two individuals. The question was whether the fraud of one could be imputed to the company and the court held that it could not. In Botwinik there were several stockholders and the holding was that the fraud of a minority stockholder could not be imputed to the company. Each decision recognizes that to impute fraud in a tax case it must be shown that the agent was acting in behalf of, and not against, the interests of the corporation.

▮▮▮▮ Asphalt Industries and Botwinik are distinguishable from the case at bar. Botwinik involved the misstatement of corporation income resulting from a minority shareholder's attempt to cover her embezzlement. The fraud was not perpetrated to benefit the corporation as in the case at bar. In Asphalt Industries the culpable agent was found to have dominated the corporation's affairs and intended to effect corporate tax saving by his fraud but the court appeared unwilling to impute fraud to the corporation when the burden of the 50% penalty would fall on an innocent shareholder. Such a consideration is not relevant in the case at bar. A minority stockholders' derivative suit against Hensley was settled in 1963. In 1969, an agreement for the sale by Hensley and his ex-wife of their stock in taxpayer provided that if the tax liability in the case at bar exceeded $325,000, including penalties and interest, the sellers should reimburse the buyer in the proportion that their stock bore to the total outstanding stock. Such protective measures were not present in Asphalt. Moreover, the fraud penalty is remedial in nature and is a safeguard for the protection of revenue, intended to reimburse the government for the expense of investigation and the loss from fraud. United States v. Thompson, 10 Cir., 279 F.2d 165, 166. Protection of innocent shareholders thus may not be an appropriate concern so long as the other elements necessary to impute fraud to the corporation are present.

▮▮▮ The Tax Court found that the affirmative evidence of fraud during all three years was overwhelming. The existence of fraud is a question of fact, and, hence, the Tax Court's findings are final unless clearly erroneous. Commissioner v. Duberstein, 363 U.S. 278, 291–292, 80 S.Ct. 1190, 4 L.Ed.2d 1218.

On the record presented, no other finding than that of the Tax Court is within the realm of reason. The Tax Court held that, viewing the record in its entirety, the fraudulent acts of Hensley should be imputed to taxpayer. We agree because we are convinced that in each taxable year the fraudulent acts were in substantial part for the tax benefit of, and intended to be for the tax benefit of, the taxpayer. Accordingly, the statute of limitations was tolled, see § 6501(c)(1), and fraud penalties were properly imposed under § 6653(b). These conclusions make it unnecessary to consider whether the limitation period for 1961 was extended by agreement.

▮▮▮ Our next concern is with the validity of the deficiency assessments, which are presumptively correct. Wallis v. Commissioner, 10 Cir., 357 F.2d 313, 314. The burden is on the taxpayer to show the invalidity of the Commissioner's action. Helvering v. Taylor, 293 U.S. 507, 515, 55 S.Ct. 287, 79 L.Ed. 623. With regard to unreported income, the taxpayer must prove that the deter-

mination is arbitrary or erroneous, and if it does so the Commissioner must satisfy the court as to the existence and amount of unreported income. Ibid. The unreported bar sales fall into this category. The Commissioner computed the deficiency for unreported sales by taking the amount of liquor purchased and by assigning percentage amounts to sales and promotion. The amount thus determined to have been sold was divided by the standard size of the drinks sold and multiplied by the minimum price therefor. With the exception of draft beer sales, the taxpayer's objections merit little consideration. Taxpayer says that the Commissioner's method was arbitrary because it failed to take into account spillage, breakage, and theft. Taxpayer assumes these conditions and adduced no proof that they would have materially affected the amounts found by the Commissioner. The showing is insufficient and does not defeat the presumption of correctness. Taxpayer says that the Commissioner failed to take into account bottle sales. It is enough to say that the testimony of bottle sales was ambiguous and unsatisfactory.

The Commissioner ignored beginning and ending inventories and based his determination on purchases. If there were such inventories, we cannot find them in the record. The frequency of purchases makes it doubtful that inventory was a significant factor. As neither beginning nor ending inventory was taken into account, the effects thereof are, at the most, problematical. In any event, the taxpayer presented no evidence that lack of inventory consideration destroys the validity of the Commissioner's determination and, hence, failed to meet its burden.

■■ Draft beer sales are in another category. The uncontradicted evidence is that taxpayer made no draft beer sales and that all sales of draft beer were made by a concessionaire. This evidence may not be disregarded.

Potucek v. Cordeleria Lourdes, 10 Cir., 310 F.2d 527, 531, cert. denied 372 U.S. 930, 83 S.Ct. 875, 9 L.Ed.2d 734. However this error of the Commissioner does not destroy the presumption of validity as to the balance of the deficiency. Draft beer transactions were separately computed by the Commissioner and are severable from the balance of the deficiency. All that is required is that the case be remanded for a recomputation which excludes draft beer sales.

■ The taxpayer has a greater burden with regard to deductions. Because these are allowed only as a matter of legislative grace, the taxpayer must establish not only error or arbitrary action but also must sufficiently persuade the fact finder as to the amount of deduction which is allowable on each claimed item. United States v. Olympic Radio & Television, Inc., 349 U.S. 232, 235, 75 S.Ct. 733, 99 L.Ed. 1024, and Burnet v. Houston, 283 U.S. 223, 227, 51 S.Ct. 350, 75 L.Ed. 1439.

■ Taxpayer does not dispute the propriety or correctness of each individual adjustment made for the taxable years. Instead, it attempts to discredit the entire determination by consideration of particular items. The first has to do with the capitalization of certain expenditures for maintenance, repairs, and labor. The Tax Court found, and we agree, that the taxpayer's records failed to adequately separate repair expenses and capital expenditures. The Commissioner capitalized 75% of the taxpayer's disbursements for building materials and an equal proportion of labor costs. In effect, taxpayer argues that the Commissioner's action was arbitrary because it failed to take into account each board, nail, and hour of labor. The Tax Court found that the method used was reasonable. There was testimony that the 75% figure was based on interviews with those familiar with construction in the area and a personal inspection of the racing plant by the examining revenue agent. Absent

accurate accounting, the use of a percentage was not arbitrary. Anson v. Commissioner, 10 Cir., 328 F.2d 703, 706–707.

■ The taxpayer's next attack is on the increase in useful life of depreciable assets. We do not agree with the taxpayer's interpretation of the pertinent schedules. In any event, the allowance of a certain useful life for one year does not preclude the Commissioner from determining a longer useful life for another year and, if there is an error in any year, the burden of proof is on the taxpayer. Broadhead v. Commissioner, 5 Cir., 254 F.2d 169, 170. The claimed inconsistency of the Commissioner is no substitute for proof of actual error. See Gasper v. Commissioner, 6 Cir., 225 F.2d 284, 288.

■ During the years in question the taxpayer had an airplane and pilot. The Commissioner computed the amount attributable to airplane expense and then disallowed 75% of that amount which was assigned to personal use of the plane by Hensley. Taxpayer offered no evidence of the correct amount of airplane expense. The plane's logbook was not introduced. In the absence of records showing the use of the plane, the Commissioner's percentage estimate was not arbitrary. Anson v. Commissioner, 10 Cir., 328 F.2d 703, 706–707. Indeed, an accountant for taxpayer had suggested to it the use of a percentage for computing airplane expense.

The taxpayer attacks the Commissioner's disallowance of substantial deductions which have been lumped together under the category of "operating expenses." Within this group are a wide variety of disbursements which were identified with varying degrees of accuracy by witnesses whose testimony was not convincing. The Tax Court held that the showing was insufficient to overcome the presumption of validity, and we agree.

The case is remanded to the Tax Court for the determination of the receipts from beverage sales without the inclusion therein of draft beer sales. Otherwise, the opinion and order of the Tax Court are sustained. Each party shall bear its own costs.