**W. C. HARGIS, Appellant,**

v.

**Olin S. GODWIN, formerly "Acting Collector of Internal Revenue" and now "Director of Internal Revenue", Appellee.**

**No. 15217.**

United States Court of Appeals Eighth Circuit.

April 29, 1955.

John M. Rose, Little Rock, Ark. (J. R. Wilson, El Dorado, Ark., was with him on the brief), for appellant.

Dudley J. Godfrey, Jr., Spe. Asst. to the Atty. Gen. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Spe. Asst. to the Atty. Gen., and Osro Cobb, U. S. Atty., Little Rock, Ark., were with him on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and THOMAS, Circuit Judges.

WOODROUGH, Circuit Judge.

Taxpayer, plaintiff below, filed suit in the District Court to recover $31,284.56, with interest thereon, which he alleged was improperly assessed and collected by defendant, formerly Acting Collector of Internal Revenue and presently Director of Internal Revenue at Little Rock, Arkansas, as a 50% "fraud penalty" under section 293(b) of the Internal Revenue Code, 26 U.S.C.A. § 293(b), for the years

1946 and 1947.[1] Plaintiff attempted to amend his complaint to include recovery of the tax deficiencies paid by him for those years but the trial court granted defendant's motion to dismiss the amendment to the complaint. The only issue presented to the jury, and with which we are concerned on this appeal, was whether the amounts paid as "fraud penalties" were improperly and erroneously collected from plaintiff for the years 1946 and 1947. The jury returned a verdict for the defendant and the taxpayer brings this appeal.

Plaintiff's Statement of Points on appeal may be said to generally assert that (1) the evidence was insufficient to sustain the verdict, and (2) the trial court erred in giving and refusing to give certain instructions to the jury. We shall first consider the question of the sufficiency of the evidence to sustain the verdict.

Plaintiff is a resident of Warren, Arkansas, and has operated an automobile agency in that community since 1928. He also engages in farming, livestock raising, and is a lumber and timber dealer. For the calendar year 1946 plaintiff filed his personal income tax return reporting thereon a net income of $10,332.-50, upon which he paid a tax of $1,432.-69. For the calendar year 1947 plaintiff reported a net income of $22,270.45, upon which he paid a tax of $5,715.32. During 1950 and 1951 an investigation of plaintiff's business activities by internal revenue agents revealed substantial discrepancies between his real net income and his reported net income and defendant determined deficiencies in plaintiff's tax returns for 1946 and 1947 in the following amounts: for 1946 his net income was determined to be $61,763.03 upon which a tax of $32,100.84 was due, and for 1947 his net income was $71,322.98 upon which a tax of $37,659.03 was due.

After crediting plaintiff with the tax actually paid for those years, adding the 50% penalty and computing interest at 6% on both the deficiency and penalty, defendant demanded payment of the total sum of $108,874.77. The full amount demanded was paid by plaintiff in 1951 by three checks, all clearly marked "Being Paid Under Protest." This suit was commenced after plaintiff's claim for refund was denied by the Commissioner of Internal Revenue.

The internal revenue agents assigned to audit and investigate plaintiff's books and records in 1950 and 1951 testified that they were unable, due to the inadequacy and incompleteness of said books and records, to determine plaintiff's income from them for the years in question. They therefore made an analysis of his bank accounts, cancelled checks and sales invoices, and, together with plaintiff's statements and meager records covering the transactions, reconstructed his financial history for the two years as follows: For 1946, car and truck sales $276,966.55, reported sales $182,636.57, understatement of sales $94,-329.98; sale of livestock $36,631.74, reported sales $24,960.50, understatement of sales $11,661.24; sale of automobile parts and repairs $48,699.46, reported sales $26,743.80, understatement of sales $21,955.66; interest income $1,666.14, reported none; real estate sales (12) with taxable gain of $1,573.27, reported sales (2) with taxable gain of $393.75, understatement of sales $1,179.52; or a total understatement of income in 1946 of approximately $130,000.00. For 1947, car and truck sales $337,693.85, reported sales $213,491.47, understatement of sales $124,202.38; sale of automobile parts and repairs $48,835.29, reported sales $36,154.50, understatement of sales $12,680.79; interest income $2,337.10, reported none; or a total understatement

1. "§ 293. Additions to the tax in case of deficiency

"(a) Negligence. * * *

"(b) Fraud. If any part of any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected, and paid, in lieu of the 50 per centum addition to the tax provided in section 3612(d) (2)."

of income in 1947 of approximately $140,000.00. Upon being advised that defendant intended to assess a deficiency in these amounts, plaintiff employed an accountant who, after thoroughly analyzing all available materials, including the revenue agents' computations, suggested that it would be more fair and equitable to the taxpayer if the increase in net worth method of determining income were adopted. The revenue agents agreed, albeit reluctantly, and plaintiff's accountant prepared net worth statements covering the years 1946, 1947, and 1948. Taxpayer, his accountant and his attorney presented the net worth statements to the revenue agents, representing them to be correct statements of plaintiff's net worth for the period involved. After several conferences and adjustments the revenue agents adopted plaintiff's net worth statements as the basis for determining his tax liability for the years 1946 and 1947. These statements showed an increase in plaintiff's net worth, or net taxable income of $61,-763.03 in 1946 and $71,322.98 in 1947, or $53,269.35 and $51,600.72 more than reported in his income tax returns for those respective years. Plaintiff thereafter signed Treasury Form 870 entitled "Waiver of Restrictions on Assessment and Collection of Deficiency in Tax" in which he acknowledged deficiencies in income taxes for 1946 and 1947 in the amounts of $30,668.15 and $31,900.96, respectively, and a penalty of 50% of those amounts. He later refused, however, to sign a final closing agreement as provided by Section 3760 of the Internal Revenue Code, 26 U.S.C.A. § 3760.

In order to sustain the imposition of the 50% penalty, it was incumbent upon the defendant to show by clear and convincing evidence that the deficiencies in tax were due to fraud with intent to evade tax. Owens v. U. S., D.C.Ark., 98 F.Supp. 621, affirmed, 8 Cir., 197 F.2d 450; Wisely v. Commissioner of Internal Revenue, 6 Cir., 185 F.2d 263. As evidence of such fraudulent intent to evade taxes, the defendant introduced testimony of the following facts: A for-mer internal revenue agent testified by deposition that in 1944 he investigated plaintiff's income tax returns filed for the years 1942 and 1943 and set up a deficiency of $625.67 against plaintiff for 1943. He further testified that he warned plaintiff at that time about keeping adequate records. The evidence showed that it was not until 1948, however, that plaintiff set up a bookkeeping system which clearly reflected his income. Revenue agents also investigated plaintiff's 1945 income tax return. In that return plaintiff reported income of $5,201.50 upon which he paid a tax of $306.70. Subsequent to the investigation plaintiff filed an amended return for 1945 showing a net income of $30,548.70 and a tax of $12,243.34. A deficiency was also assessed against plaintiff in 1948 and he was required to pay $2,124.18 more in tax than his original tax return showed was due. It was also shown on behalf of defendant that at the beginning of the audit of plaintiff's books in 1950, he was requested to turn over all his records to the revenue agent. Plaintiff complied, representing that the records so delivered were all that he had. Later, however, after the revenue agent had computed plaintiff's income under the bank deposits method, a large number of sales tickets or invoices covering at least part of the period in question were found by plaintiff's bookkeeper and accountant in an attic over plaintiff's place of business. Through the use of these invoices it was determined that the income arrived at by the revenue agent was too high and it was accordingly reduced. The revenue agent also testified that plaintiff told him that he had no other bank accounts except in the Bank of Warren. It was later discovered that plaintiff had an account in the Merchants & Planters Bank in Warren where he had deposited some $30,000.00 in 1947.

Plaintiff testified in his own behalf and denied that any deficiency in his income tax for the years in question was due to fraud with intent to evade taxes. He testified that he was totally unfamiliar with bookkeeping and accounting

methods and preparation of income tax returns; that he had never prepared an income tax return in his life but depended entirely on his accountant for that. He further testified that he employed the revenue agent who audited his 1942 and 1943 tax returns, after the latter left the government service, and that by employing a competent accountant and furnishing him with the necessary information he thought he was doing all that was required of him. The former revenue agent testified, however, that if an item did not appear on plaintiff's tax returns it was because he was not furnished with that information. Plaintiff admitted that he knew his records were inadequate and that he had failed to report all of his income, but that he thought the amount of the deficiency arrived at was excessive. He denied any intention on his part to conceal the account in the Merchants & Planters Bank and the sales invoices discovered during the course of the investigation. Character witnesses testified on his behalf and it was also shown that the revenue agent who audited his 1942 and 1943 tax returns reported that "Taxpayer was honest in his efforts to pay his income tax, but ignorant on the laws." There was further evidence to the effect that plaintiff co-operated fully with the revenue agents during the investigation.

Considering the evidence and all reasonable inferences therefrom in a light most favorable to the verdict, as we must, Dolan v. U. S., 8 Cir., 218 F.2d 454, and cases cited, we are convinced that there was sufficient evidentiary basis for the jury's finding that the deficiencies in plaintiff's income tax returns for the years 1946 and 1947 were due to fraud with intent to evade taxes. Gross understatements of income constitute some evidence of fraud. In Rogers v. Commissioner, 6 Cir., 111 F.2d 987, 989, it was held that "Discrepancies of 100% and more between the real net income and the reported income for three successive years strongly evidence an intent to defraud the Government." In the present case the discrepancies between real net income and reported net income were even greater. Concealment, one of the recognized "earmarks" of fraud, could reasonably be inferred by the jury from plaintiff's failure to disclose the bank account in the Merchants & Planters Bank, and from the opportune finding of the sales tickets used to reduce the deficiency originally computed by the revenue agents. Plaintiff's failure until 1948 to install an adequate bookkeeping system, was, under the circumstances, also indicative of his intent to defraud the government of taxes. His claim of complete ignorance of bookkeeping methods and taxing laws and regulations fell upon deaf ears, and understandably so, when the jury learned that since 1941, the first year in which plaintiff filed an income tax return, until 1949, almost every tax return filed had been questioned and a deficiency paid, even after plaintiff had been warned of his obligation to keep adequate records. The jury was obviously unimpressed by the claim that plaintiff, a highly successful business man, could through ignorance, negligence or mere oversight, understate his income in such substantial amounts in successive years. Cf. Wickhan v. C. I. R., 8 Cir., 65 F.2d 527. Plaintiff's argument that the verdict is not supported by sufficient evidence is therefore not sustained.

It is contended that the trial court erred in giving its own instruction No. 2, which reads, in part, as follows:

"The undisputed evidence also shows that the plaintiff, W. C. Hargis, had income in each of the two years in the following amounts: 1946, $61,763.03; 1947, $71,322.98.

"The undisputed evidence further shows that the plaintiff, W. C. Hargis, in filing his returns and reporting his income for each of the two years, understated that income in the following amounts: 1946, $53,269.35; 1947, $51,600.72." Covering this same point, plaintiff assigns error on the Court's refusal to give his requested instructions No. 10 and 11 which would have, in effect, instructed the jury to return a ver-

dict for plaintiff unless the defendant proved the deficiencies in tax by evidence other than the use of the increase in net worth method.

 Admittedly the taxpayer's books in this case were inadequate and there can be no question, under the many decisions, that the net worth method is a proper method of proof in such a case. It is now settled that the net worth method may properly be used even though the taxpayer's books are not inadequate. Holland v. United States, 348 U.S. 121, 75 S.Ct. 127. It is argued, however, that the net worth method was improperly used in this case because "(a) the amounts of net worth were not established by competent and sufficient evidence; (b) the beginning statement was shown to be at least $5,265 too small; (c) the required 'adjustments' could not be made because of a complete lack of records therefor; (d) the burden of proof is thereby erroneously shifted to the taxpayer; and (e) the documentary evidence shows the use of said method multiplied appellant's income by 5 and his tax by 10, approximately, which is inconsistent with reason, based on the history of appellant's business."

(a). The accountant who was employed by plaintiff to prepare the net worth statements testified that he analyzed all available books, records, invoices, checks, etc., and together with statements of plaintiff, his employees, and members of his family, computed plaintiff's opening net worth on January 1, 1946, as follows:

| | |
|---|---:|
| Cash in Bank | $ 1,673.96 |
| Government Securities | 3,625.00 |
| Real Estate | 61,912.87 |
| Fixed Assets | 20,300.00 |
| Livestock Inventory | 735.00 |
| Hargis Bros. | 39,619.66 |
| Reserve for Depreciation | 5,600.00 |
| Total Net Worth | $122,266.49 |

Inventories of plaintiff's automobile business were handled in this manner: Prior to 1945 plaintiff's income tax returns did not list an inventory. The internal reve-

nue agent who investigated plaintiff's tax return for that year set up an opening inventory in the amount of $20,537.04. An actual physical inventory of plaintiff's automobile business taken early in 1949 revealed that he had an inventory of $58,388.90 at the end of 1948. The difference between the 1945 opening inventory and the 1948 closing inventory, $37,851.86, was prorated equally over the four intervening years, thus making the 1946 opening inventory $30,000.00.

The net worth statement of plaintiff's accountant, as accepted by the internal revenue agents, revealed that plaintiff's net worth on December 31, 1946, was $170,198.40, or an increase of $47,931.91 over his net worth as of January 1, 1946. To this latter figure living expenses and taxes in the amount of $13,831.12 were added, making a total increase in plaintiff's net worth in 1946 of $61,763.03, or $53,269.35 more than reported on his income tax return for that year. The 1947 net worth statement was computed in like manner and revealed an increase in total net worth of $71,322.98, or $51,600.72 more than reported on plaintiff's tax return for that year.

Although plaintiff's brief contains vague and general criticisms of the net worth method of determining income, to-wit: "obviously adjustments are necessary so as to eliminate therefrom numerous items, such as returns of capital, tax-exempt income, income excluded from taxation under the Internal Revenue Code, income taxed or to be taxed in another year, etc.", we think it significant that, except for one item, plaintiff neither in the court below nor here has offered specific suggestions as to what parts of the increase in his net worth did not constitute taxable income. He did not claim to have a large amount of cash on hand, or that his increase in net worth was in any way attributable to gifts or inheritance. He offered no leads or clues to the revenue agents which, if investigated, might have disclosed income from a nontaxable source. He does not claim that the investigation made by the reve-

nue agents was perfunctory or incomplete. He does not dispute that income from capital gains was correctly computed under then-existing law, or that depletion allowed for timber lands was insufficient. He does not argue that depreciation was improperly denied in computing gains on the sale of real estate. Depreciation was allowed on one sale only as the other eleven sales involved farm lands. The revenue agents computed the gain on the real estate sales on the basis of information furnished by plaintiff and because he did not claim to have made improvements and additions thereto, no increase in cost basis was allowed.

The only evidence offered by plaintiff to dispute the correctness of the net worth statements, except as noted in (b), ante, was his own assertion that he "thinks" his income as computed by the net worth method was "excessive". This statement can hardly be said to contradict the clear proof of income adduced by defendant, especially where plaintiff has admitted the inadequacy of his books and the understatement of his income, and where plaintiff's cooperation in assisting his accountant prepare the net worth statements was not denied. We conclude that the amounts of net worth were established by competent and sufficient evidence.

(b). The only specific objection plaintiff offers to the 1946 opening net worth statement is that the livestock inventory is listed at $735.00 whereas plaintiff contends that it was actually $6,000.00. The $735.00 figure was taken from plaintiff's 1946 income tax return which listed an opening inventory in that amount. This same tax return listed livestock purchases during 1946 at $23,628.92 and livestock sales at $24,960.50, which latter figure, after investigation, was increased to $36,631.74. In an attempt to show a larger opening inventory of livestock, plaintiff introduced in evidence a financial statement given by him to a local bank on June 11, 1946, which listed 150 head of cattle valued at $6,000.00. We see nothing inconsistent in the above evidence, as the jury could reasonably in-

fer, from the large purchases of livestock during 1946, that some of it was purchased between January 1st and June 11th, thus explaining the apparent discrepancy in livestock values for those two dates.

(c). The argument that the required "adjustments" in the net worth statements could not be made because of plaintiff's complete lack of records is patently without merit. It is analogous to the type of argument advanced in United States v. Johnson, 319 U.S. 503, 517, 518, 63 S.Ct. 1233, 1240, 87 L.Ed. 1546, where the Supreme Court, in approving use of the net worth method in a case where the taxpayer had destroyed his books, said "To require more * * * proof * * *, would be tantamount to holding that skilful concealment is an invincible barrier to proof." So here, plaintiff's lack of records did not foreclose other avenues of proof of "adjustments" in determining his net income. The revenue agent who conducted the investigation and conferred with plaintiff's accountant after the latter had prepared the net worth statements testified that the required adjustments were made. The record shows that capital gains, living expenses, taxes paid, depreciation, depletion, loss on the sale of real estate, and other items were all considered in arriving at the net worth computations. Again plaintiff is in the position of not having suggested any or other "adjustments" which should have been, but which were not, made. The uncontradicted evidence being that the required "adjustments" were made, this court cannot require more.

(d). Plaintiff's argument that the net worth method of proving income shifts the burden of proof to the taxpayer has been answered contrary to his contention by the Supreme Court in the Holland case, supra. We need say nothing more on this point except to note that defendant met his burden of proof in this case.

(e). The argument that use of the net worth method multiplied plaintiff's income by 5 and his tax by 10 is, of course, no argument at all. It is noted,

however, in connection with this point, that error is urged on the trial court's refusal to allow in evidence plaintiff's income tax returns for the years 1944–1953. Plaintiff attempted to introduce his tax returns for these ten years to show a great disparity between his income for 1946 and 1947, as computed by the net worth method, and his income for the other years in this period. Not only were many of these tax returns admittedly false, but plaintiff had further admitted that "1946 and 1947 were two of the largest years he had." We find no error in the court's refusal to admit the designated income tax returns in evidence.

From what has been said heretofore, it appears clear that the trial court was not in error in instructing the jury that the "undisputed evidence" showed that plaintiff had income of $61,763.03 in 1946 and $71,322.98 in 1947, and that he had understated that income by $53,269.-35 and $51,600.72, respectively, in those years. This also disposes of plaintiff's contention that the court erred in refusing his requested instruction No. 4 which would have instructed the jury that if no deficiency was established, the imposition of a 50% penalty was erroneous and improper. Likewise, plaintiff's requested instructions No. 10 and 11, which would have required proof of deficiencies other than by use of the net worth method, were properly denied.

Plaintiff's requested instruction No. 6, listing eleven so-called "earmarks" of fraud, was refused by the trial court and error is now predicated on such refusal. We think the requested instruction was substantially covered in the trial court's own instructions to the jury and find no error in the refusal to give it as such. This is also true of plaintiff's requested instruction No. 7 which, in substance, said that plaintiff's moral, educational and business background should be considered by the jury in determining if he had been guilty of fraud with intent to evade taxes.

Plaintiff also urges error in the trial court's refusal to give requested instruction No. 12 which provided, in pertinent part, that, "You are instructed that the proposed 'compromise' and the accompanying waiver to make it effective, both contained in a U. S. Treasury Form 870 signed by the parties herein, must be disregarded by you, * * *." Form 870 was read in evidence, over plaintiff's objection.

Defendant does not contend, in view of the numerous decisions to the contrary, that Form 870 constituted a binding agreement on the part of the taxpayer precluding him from bringing suit for refund of taxes paid on the basis of such compromise settlement. Defendant introduced the Form 870 "as a circumstance of the whole proceeding" and the court received it without comment except "I'll permit it to go in." But this court, in the recent case of Clark v. United States, 8 Cir., 211 F.2d 100, 105, has ruled directly that the Form 870 is not admissible as having legal probative quality against a taxpayer. As to the admissibility in evidence of Treasury Form 870 in that case, this court said, at pages 105 and 106:

> "The signing of such a waiver [Form 870] by a taxpayer is without any effect to preclude him from maintaining a civil suit for refund of the taxes assessed by the Commissioner on the basis of it. Payson v. Commissioner, 2 Cir., 166 F. 2d 1008, 1009; Herber v. Jones, D. C.W.D.Okl., 103 F.Supp. 210, 214, affirmed, 10 Cir., 198 F.2d 544. Much less then is such a waiver entitled to have any effect to convict a taxpayer on a criminal charge of evasion. See also Annotation, 11 A. L.R.2d pages 903, 907, 912, 915.
>
> *"The Exhibits therefore should not have been received in evidence as having legal probative quality."* (Emphasis added.)

It must be held, therefore, that the compromise offer contained in Form 870 in

this case was not admissible in evidence to establish the position of the Director.

But in view of the situation presented and the particular issue submitted to the jury in this case it does not appear that the erroneous admission in evidence of the Waiver of Restrictions Form 870 as filled out and signed by the plaintiff requires a reversal of the judgment. It was of course essential to plaintiff's recovery to establish that he had paid the amounts that had been assessed against him which he was suing to have refunded and that fact was established. The court was at pains to instruct the jury that "the fact that plaintiff has already paid said penalty for 1946 and 1947 should not be considered by you as evidence that plaintiff thought he justly owed said amounts, or as an admission that he had been guilty of fraud with intent to evade tax." The relevant gist of the Form 870 which plaintiff signed in 1951 was simply that the plaintiff was declaring himself willing to pay the amount of deficiency, interest and penalty that was being assessed against him as set forth in dollars and cents in the Form. Taken together the Form and the payment merely reflect that plaintiff was declaring himself willing to make the payments and that he did make them.

But the matter of plaintiff's making payment or willingness to make payment in 1951 was not subject to controversy or within the issues submitted to the jury. The court instructed "This case presents only one issue for decision by you, namely, whether or not the understatement of income by plaintiff, * * and the consequent failure to report and pay the correct amount of tax due for those years was caused by a fraudulent intent on the part of [plaintiff] to evade the payment of his proper income taxes." Had Form 870 not been received in evidence the court's instruction that the undisputed evidence showed plaintiff had understated his income would still have been proper and applicable. As his payment of amounts assessed against him afforded no evidence in respect to the charge of fraud manifestly his declaration of willingness to make payment of the same amounts indicated by Form 870 afforded none. It is conceivable that if the matter in issue before the jury had been the amounts of the taxpayer's income as it was in Clark v. U. S., supra, it might have caused prejudice to receive the Form in evidence before the jury setting forth a computation in figures with the taxpayer's name appended. But in this case where all questions as to the amount of income and tax were properly taken from the jury, it is fairly evident that the receipt of the Form in evidence was not a substantial factor in the jury's verdict and the verdict would not have been different had the evidence been excluded or plaintiff's requested instruction given. F.R.Crim.Proc. Rule 52 (a), 18 U.S.C.A.

We have carefully considered all the points raised by plaintiff on this appeal but find no reversible error in the record. The judgment appealed from is affirmed.