BERNARD B. HAHN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent BERNARD B. HAHN AND VERNA P. HAHN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hahn v. Commissioner
Docket Nos. 4932-71, 5137-71
United States Tax Court
T.C. Memo 1973-194; 1973 Tax Ct. Memo LEXIS 95; 32 T.C.M. (CCH) 895; T.C.M. (RIA) 73194; August 29, 1973, Filed *95 Accountants hired by petitioner reconstructed his business income and expenses each year by looking to his bank statements, deposit slips and cancelled checks. The petitioner did not maintain normal business records but his accountants did not request that he do so. Further, for the calendar year 1960, petitioner failed to report his distributive share of partnership income which was shown on the partnership return to be $3,079. However, petitioner never saw the return, was informed of his share by phone after his personal return was prepared, and believed he had offsetting losses. Held: The years in issue are barred from assessment. Respondent has failed to show that any of the alleged understatements of income were due to fraud with the intent to evade tax within the meaning of sections 6501(c) (1) and 6653(b). Truman Clare and R. David Garber, for the petitioners. Robert J. Murray, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION 2 STERRETT, Judge: The respondent determined deficiencies and additions to tax in the petitioners' Federal income tax returns as follows: Additions to Tax Petitioner
Year
Deficiency § 6653(b) § 6654 Bernard B. Hahn
1959
$7,462.83
$3,731.42
-0-
Bernard B. and Verna P. Hahn
1960
3,482.93
[1] *96 1,741.47
-0-
Bernard B. and Verna P. Hahn
1961
1,600.53
[2] 800.27
$70.76
The issues to be decided are as follows: (1) Whether any part of the underpayment of tax for the calendar years of 1959, 1960 and 1961 was due to fraud with the intent to evade tax within the meaning of sections 6501(c) (1) and 6653(b), Internal Revenue Code of 1954, [3] thereby extending the statutory periods provided for assessment by sections 6501(a) and 6501(e) and imposing a penalty equal to 50 percent of the underpayment; if so, then (2) Whether the petitioner, Bernard B. Hahn, understated his gross business receipts for 1959, 1960 and 1961 by $8,092.14, $9.017.02 and $4,531.26, respectively. (3) Whether the petitioner overstated the cost of goods sold for 1959 and 1960 by $10,742.15 and $348.71, respectively. 3 (4) Whether the petitioner realized $3,079 from an undertaking for profit which he failed to report on his income tax return for 1960. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits *97 attached thereto, are incorporated herein by this reference. Petitioner, Bernard B. Hahn, filed a separate Federal income tax return for the calendar year 1959 with the district director of internal revenue at Omaha, Nebraska. Bernard B. Hahn and Verna P. Hahn filed joint Federal income tax returns for the calendar years 1960 and 1961 with the district director of internal revenue at Omaha, Nebraska. At the time of the filing of the petitions herein the parties resided at Fremont, Nebraska. Verna P. Hahn is a party to docket No. 5137-71 solely by reason of having filed a joint return and we will henceforth refer to Bernard B. Hahn as petitioner. Throughout the years in issue, the petitioner owned and operated a sole proprietorship under the name Ace Glass Company. Ace was engaged in the business of selling and installing various glass products. An accounting firm of certified public accountants, most notably Eldean L. Erickson (hereinafter Erickson), 4 prepared the Federal income tax returns of the petitioner for the years 1959, 1960 and 1961. In preparing the petitioner's Federal income tax return for 1959, as well as prior years, Erickson relied upon an analysis of the *98 petitioner's bank statements, cancelled checks and deposit slips. The petitioner, a high school graduate, was advised to use this method by his accounting firm. For 1960 and 1961, Erickson continued to rely on information from bank statements and cancelled checks, but additionally used a general ledger and a check disbursements and receipts journal. In analyzing the petitioner's expenditures by check for 1959, Erickson prepared what is commonly referred to as a "check spread". When the face of a cancelled check did not clearly reflect the purpose for which it was written, Erickson classified it as an "unidentified" check until the purpose could be ascertained by conferring with the petitioner. Of $4,578.10 in unidentified checks, $2,135 was added as an adjustment to the category "temporary loans" on the check spread for 1959. Erickson followed a similar procedure when a bank deposit ticket did not indicate whether the source of a particular deposit was a business receipt, return of capital, a loan, or a repayment of loans made by the petitioner to others. 5 Petitioner's tax return for 1959, as prepared by Erickson, indicated the following: Total receipts
$61,423.11
Less rebates
127.73
61.295.38
Less cost of goods sold
45,365.32
Gross Profit
15,930.06
Less expenses
12.406.33
(including $723.55 of interest)
Net Profit
$3,523.73
Petitioner *99 used the accrual method of accounting for determining his cost of goods sold, although he was on a "hybrid" method generally. The cost of goods sold was determined as follows: Purchases per disbursement journal
$34,671.94
Add accounts payable 12/31/59
12,678.38
47,350.32
Less accounts payable 1/1/59
2,000.00
Cost of goods sold
$45,350.32
The accounts payable for January 1, 1959 had apparently been estimated. The actual accounts payable were as follows: Company
1/1/59
12/31/59 Interstate Glass Co.
$1,532.27
$372.90
Pittsburg Plate Glass
9,256.73
9,902.94
Safelite Co.
-0-
926.99
Globe Glass Mfg. Co.
2,111.54
1,561.94
Rubber Products Co.
164.80
236.80
Total
$13.065.34
$13.001.57 Because the proper accounts payable were not used, petitioner's cost of goods sold was overstated by $10,742.15. 6 The petitioner made deposits during 1959 to three bank accounts in the amount of $82,473.97. This can be broken down as follows: Bank and Account
Amount of Deposits First State Bank
Ace Glass Co.
$38.716.10
First State Bank Bernard B. Hahn personal
945.33
Fremont National Bank Ace Glass Co.
42,812.54
Total Deposits
$82,473.97
In preparing the petitioner's tax return for 1959, Erickson did not review deposits made to the Bernard *100 B. Hahn personal account in the First State Bank. Erickson also advised the petitioner to use only one account for business receipts. The petitioner made deposits of $5,660 in currency during 1959 which were either deposited in his business accounts and then credited to his personal drawing account or deposited directly into his personal account. The petitioner secured documented loans during 1959 as follows: Creditor
Amounts Valley Finance Co.
$950
First National Bank of Omaha
650
American Thrift Corp.
4,500
First State Bank of Fremont
2,600
Fremont National Bank
1,300
Total
$10,000 7 The petitioner redeposited checks which had been returned by the banks totaling $1,438.72. Moreover there had been a clear transfer of funds between his various accounts amounting to $195. The petitioner's business expanded in 1958 and created a rather unstable financial situation. Many of the glass companies dealing with the petitioner refused to extend him credit and required cash on delivery of their merchandise. Petitioner would often cash checks with friends in order to have sufficient funds to cover already outstanding checks for merchandise, rent, or wages. Furthermore the petitioner and several *101 of his friends would temporarily loan each other money. During 1959, David Beber of Omaha, Nebraska paid the petitioner $2000 in loans previously obtained from the petitioner. On December 3, 1959 the petitioner received $100 from Norman Kennedy. Also during the same year, the petitioner received three checks from Duane Hindmarsh in the amounts of $375, $500 and $650. Though petitioner indicated he had incurred interest expenses of $723.55 his actual expenses were greater, totaling $765.55. 8 For the calendar years 1960 and 1961, Erickson had the petitioner set up a general ledger. The petitioners' joint Federal income tax return for 1960 indicated the following: Total Receipts
$66,450.61
Less rebates
-107.12
66,343.49
Less cost of goods sold
-39,850.34
Gross Profit
26,493.15
Less expenses
-20,733.87
Net profit
5,759.28
Verna Hahn income
3,306.13
Adjusted gross income
8,095.95
Less standard deduction
809.60
Less two personal exemptions
-1,200.00
Taxable Income
$6,086.35
The petitioner made purchases of goods used in his business of $39,022.06. Petitioner's accounts payable were as follows: Company
1/1/60
12/31/60 Interstate Glass Co.
$ 372.90
$ 1,589.54
Pittsburg Plate Glass Co.
9,902.94
12,627.19
Safelite Co.
926.99
-0-
Globe Glass Mfg. Co.
1,561.94
2,024.36
Rubber Products Co.
236.80
28.37
Krygers Safe-T Glass & Paint Co.
-0-
790.32
$13,001.57
$17,059.78
The *102 petitioner and his wife made gross deposits to four bank accounts during 1960 as follows: 9 Bank
Amount of Deposit First State Bank - Ace Glass Co.
$ 10,546.36
Fremont National Bank - Ace Glass Co.
83,566.17
First National Bank of Omaha - Joint Account of B. B. Hahn & Verna Hahn
6,049.95
Nebraska Savings & Loan, Omaha - Joint Account of Bernard Hahn, Verna Hahn & Arlene Huffaker
1,543.57
Total Deposits
$101,706.05 The petitioner had redeposited returned checks amounting to $1,861.53. There had also been a transfer of funds between the various accounts of at least $6,702.73. The respondent found that the petitioner had made certain cash expenditures which were not traceable to a particular account as follows: Amount Paul Bundy Agency - Personal Residence
9/2/60
$ 2,625.00
9/27/60
782.33
9/28/60
500.00
Fremont National Bank - Loan Repayments
9/28/60
600.00
[4] *103 *104 *105 *106 *107 *108 *109 *110 1/3/61
2,082.58
First State Bank - Loan Replacement
10/27/60
697.55
Kavich Furniture
10/10/60
638.00
10/31/60
400.00
Byron Reed - Rental Payments
67.50 per mo.x 6 mos.
405.00
Grant Chevrolet - Truck Purchase
1,000.00
Vacation - Las Vegas Sands Motel
1,109.50
Total
$10,839.96
The issue of fraud is decidedly factual, to be resolved only after a careful analysis of all the particular circumstances of a case. Lessman v. Commissioner, 327 F.2d 990 (C.A. 8, 1964), affirming a memorandum opinion of this Court; Robert P. Lord, 60 T.C. 199; Anson Beaver, 55 T.C. 85 (1970). Congress has chosen to place the burden of proof with the Commissioner. *111 Section 7454(a). Further, the evidence necessary to establish fraud must be clear and convincing. Klassie v. United States, 289 F.2d 96 (C.A. 8, 1961); Robert P. Lord, supra; Arlette Coat Co., 14 T.C. 751 (1950). As stated in Mitchell v. Commissioner, 118 F.2d 308, 310 (C.A. 5, 1941), remanding 40 B.T.A. 424 (1939), "The fraud 19 meant is actual, intentional wrongdoing, and the intent required is the specific purpose to evade a tax believed to be owing". After viewing the entire record, though not entirely free from doubt, we feel that the respondent has failed to sustain his heavy burden of proof. His failure may, in part, be attributable to the passage of time from the years before the Court. However, we can only assume that the delay is of his making since the statutory notices are dated May 17, 1971, over 9 years after the last return in issue was filed. However, the petitioner is not blameless in this matter since part of the difficulty in the case lies with the lack of normal business records. In preparing the petitioner's tax returns, his accountants relied primarily on bank statements, cancelled checks, and deposit slips. Such a method can at best be an estimation *112 of the business transactions that actually occurred. We are therefore not surprised by the allegations made by the respondent. However, we are not willing to conclude casually that the apparent errors were caused through deliberate attempts to avoid taxation. This is especially so when we consider the fact that a firm of certified public accountants advised the petitioner to use this method of accounting over a period of years well in excess of the years in issue. See Marko Durovic, 54 T.C. 20 1364, 1398 (1970); Fred Draper, 32 T.C. 545 (1959). In fact petitioner's continued use of accountants to prepare his tax returns is some indication of his intent to pay the taxes due. The respondent has reconstructed the petitioner's income using a method similar to that used by the petitioner's accountants, known as the bank deposits-cash expenditures method. See Granat's Estate v. Commissioner, 298 F. 2d 397 (C.A. 2, 1962) affirming per curiam a memorandum opinion of this Court. He has concluded that petitioner's gross business receipts were understated by $8,092.14, $9,017.02 and $4,531.26 for the calendar years 1959, 1960 and 1961, respectively. While not inconsequential, these *113 certainly are not substantial understatements when compared with gross receipts of $61,423.11, $66,450.61 and $78,003.73 actually shown on the return. See Hargis v. Godwin, 221 F. 2d 486 (C.A. 8, 1955); but compare L. Glenn Switzer, 20 T.C. 759 (1953). Such understatements, assuming their correctness, may come merely from the shortcomings known to exist with the bank deposit method. [6] We will discuss those specific circumstances the respondent has found indicative of fraud. At year's end, the petitioner classified certain bank deposits as loans or repayments of loans made to others, rather than as business receipts, thereby 21 reducing gross business deposits. Based on the testimony at trial, we find petitioner's actions to have some foundation in fact. Indeed, one of respondent's own witnesses testified that he and the petitioner frequently loaned each other money. We were also impressed with the fact that the petitioner, due to the financial instability of his business, was required at times to pay cash on delivery of certain merchandise. After having paid by check, the petitioner *114 was often forced to write further checks to secure cash for deposits to cover the earlier check. The latter checks would be postdated, or simply held by friends for a period of time, giving the petitioner in essence temporary loans. Such deposits can not be considered as coming from a taxable source and would have the effect of reducing the respondent's alleged understatements. Teichner v. Commissioner, 453 F.2d 944 (C.A. 2, 1972), reversing a memorandum opinion of this Court. Moreover, petitioner's present accountant presented a schedule of checks written to cash or close friends, which while not conclusive, did lend weight to the argument that the petitioner had more deposits from nontaxable sources than the respondent allowed. Goodrich, a Special Agent of the Internal Revenue Service attempted to trace some of the petitioner's business receipts. In an extensive canvass of the petitioner's business patrons, 22 he was able to trace all but $1,627.45, $3,850.79 and $498.94 of business receipts for the years in issue directly to bank deposits. Because Goodrich took checks and tried to find a correlating bank entry, deposits made in cash by the petitioner might not have clearly *115 reflected their source, thus limiting the value of Goodrich's survey. Under any circumstances the non-traceable receipts were so minimal in amount that their existence hardly demands a finding of fraud. The respondent urges further that an application made by the petitioner to the SBA belied the correctness of his income tax returns. The application showed gross sales figures for 1959 and 1960 as $66,295.38 and $71,343.49, when petitioner's tax returns showed $61,423.11 and $66,450.61 for the same years. We are convinced by accountant Erickson's testimony that the discrepancy was due to an attempt on his part to reflect more accurately to the SBA accounts receivable which had not been considered in figuring petitioner's tax liability (on the cash basis) but which had accrued during the earlier years. Another example used by respondent, which he argues is indicative of petitioner's attempt to evade tax, is that the petitioner wrote a postdated check in the amount of $1,000 to Fred Dvorak. Sometime thereafter he redeemed the check, already endorsed by Dvorak, for $1,000 in cash. He later 23 transferred the check to Daton D. Camp in partial repayment of a loan. Respondent contends *116 this was a fraudulent attempt to conceal business receipts by the petitioner's alleged failure to alert his accountants of the cash payment. The respondent, however, has not shown that the payment came from business proceeds. On these bare facts, we are not able to adduce any fraudulent intent. Conjecture is not a sufficient foundation on which to base a finding of fraud. We were also not able to find sufficient evidence to discuss respondent's contention that the petitioner concealed business receipts in personal bank accounts. The petitioner admittedly overstated his cost of goods sold for 1959. Erickson testified that a beginning accounts payable for 1959 was estimated to be $2,000. It has been stipulated that the correct amount was $13,065.34. Again we are not willing to impute fraud where perhaps nothing more than an error or miscalculation took place. Respondent would also have us believe that the $348.71 overstatement of cost of goods sold for 1960 was also due to fraud. Lastly, the petitioner failed to report $3,079 for the year 1960, shown as his distributive share of partnership income from a gambling operation. The partnership return, dated April 11, 1961 was *117 signed only by Matthews. At some later date, the petitioner was informed of his share by Matthews. 24 Matthews did not send a copy of the return to the petitioner, which the petitioner desired before informing his accountants. Further, petitioner suffered some personal losses in connection with the gambling operation which he felt would offset much of his income. Petitioner was negligent in not pursuing Matthews to get a copy of the return. But we do not feel the money was excluded with the intent to evade taxes believed to be owing. Moreover, part of the negligence may have been brought about by learning of his share sometime after April 11, 1961 when his income tax return for 1960 was prepared on March 14, 1961. The record in this case reflects a carelessness in the preparation of business records and little regard for sound business practices. Nevertheless, "negligence, whether slight or great is not equivalent to the fraud with the intent to evade tax named in the statute". Mitchell v. Commissioner, supra at 310. Respondent has not presented a clear and convincing case of fraud, as is his task. "Fraud implies bad faith, intentional wrongdoing, and a sinister motive. *118 It is never imputed or presumed. Mere suspicion of fraud and mere doubts as to the intentions of the taxpayer are not sufficient proof of fraud". L. Glenn Switzer, supra at 765. 25 We therefore hold that the years in issue, 1959, 1960 and 1961 are barred from the assessment of any deficiencies. Accordingly, Decisions will be entered for the petitioners. Footnotes
1. The fraud penalty of sec. 6653(b)↩ has been asserted only against petitioner Bernard B. Hahn. 2. Footnote 1, supra. ↩
3. All statutory references are to the Internal Revenue Code of 1954 unless otherwise indicated. ↩
4. Petitioner received a check dated December 31, 1960 in the amount of $2,082.58 from Harold Gocken. This check was not deposited in any account but was used to make a payment on one of petitioner's outstanding loans. 10 The petitioner secured documented loans during 1960 as follows: Creditor
Amount Fremont National Bank (unsecured)
$ 7,395
Fremont National Bank (secured)
2,400
First National Bank, Omaha
650
Valley Finance Co.
1,400
First State Bank
1,500
Daton D. Camp
$18,345
During 1960, the petitioner deposited $6,038 in currency in the Ace Auto Glass account at the Fremont National Bank. All of these deposits were credited to petitioner's personal drawing account. The petitioner also made certain currency deposits to his other bank accounts. During 1960 the petitioner received checks from Duane Hindmarsh totaling $2,250. At least $1,050 of that amount constituted a loan to the petitioner. Petitioner had a further return of capital during 1960 as follows: Source
Amount Sale of bonds
$ 714.25
Lea Huffaker deposit
148.75
Sale of stock and egg futures
2,474.96
Total
$3,337.96 11 Petitioner had income from his wife's net salary of $2,680.13 and dividends of $130.54 and interest income of $76.75. During the calendar year 1960, petitioner became associated with Robert J. Matthews in an undertaking for profit and loss. A local Veterans of Foreign Wars (VFW) chapter approached petitioner about organizing gaming affairs to raise money. Petitioner contacted Matthews, who had considerable experience running dice or crap games, and on a periodic basis they operated such a game with the VFW sharing in the profits. Matthews kept all the books and records for these games. Matthews caused a Form 1065 partnership return dated April 11, 1961 for the partnership entitled "Matthews, O'Toole, Robinson, Hahn" to be filed for the calendar year 1960, showing that petitioner's distributive share of income was $3,079. Thereafter petitioner was advised of his share by phone conversation with Matthews, but he did not receive a copy of such return. The petitioner did not report this income to his accountants because he was waiting for a written statement from which he could subtract certain personal losses he had sustained in the operation of the game. Petitioner's business expenses for 1960 were as follows: 12 Salaries
$ 8,830.00
Interest
1,174.04
Taxes
887.54
Bad Debts
166.00
Depreciation
2,727.32
Repairs
246.05
Miscellaneous expenses
6,702.92
$20,733.87
Petitioner's joint Federal income tax return for the calendar year 1961 indicated the following: Total receipts
$78,003.73
Less rebates
-15.20
77,988.53
Less cost of goods sold
-40,844.99
Gross profit
37,143.54
Less expenses
-22,654.39
(including interest & depreciation of $2,725.26)
Net profit
14,489.15
Plus Verna Hahn income
344.66
Plus sale or exchange of property
198.19
Less rental loss
-159.55
Adjusted gross income
14,872.45
Less personal deductions
-1,309.09
Less two personal exemptions
-1,200.00
Taxable Income
$12,363.36
Petitioner's cost of goods sold was $40,855.81 for the calendar year 1961. The petitioner and his wife made gross deposits to two bank accounts as follows: Bank and Account
Amount First State Bank - Ace Glass Co.
$ 7,221.76
Fremont National Bank - Ace Auto Glass
100,431.26
$107,653.02
The petitioner redeposited returned checks in the amount of $708.64. A transfer of funds between accounts of at least $825 occurred during 1961. 13 The petitioner made certain cash expenditures which were not clearly traceable to a particular bank account as follows: Amount First State Bank-Loan Repayment
$1,500.00
Fremont National Bank-Loan Repayment
April 10, 1961
412.00
April 26, 1961
275.00
April 26, 1961
242.10
May 15, 1961
230.00
May 18, 1961
1,600.00
June 22, 1961
158.00
August 24, 1961
327.00
Total
$3,244.10
Kavich Furniture
Feb. 3, 1961
150.00
March 16, 1961
180.00
Sept. 29, 1961
200.00
Total
$530.00
Valley Finance-Loan Repayments
Sept. 14, 1961
600.00
Dec. 18, 1961
604.67
Total
$1,204.67
Industrial Loan & Investment Co.-Loan Repayments
Feb. 27, 1961
148.00
June 10, 1961
48.00 Total
$ 296.00
Fred Dvorak-Loan Repayments
$1,000.00
Total Cash Expenditures
$7,774.77
On or about March 15, 1961, the petitioner wrote a check to Fred Dvorak in the amount of $1,000 and dated it April 7, 14 1961. At some later date, petitioner redeemed his check from Dvorak for $1,000 in cash. Petitioner then transferred this check to Daton D. Camp in partial repayment of a loan which Camp had granted the petitioner during 1960. The petitioner received at least the following documented loans during 1961: Creditor
Amount Fremont National Bank (unsecured)
$ 2,775.00
Fremont National Bank (secured)
2,900.00
Small Business Administration
18,085.24
Industrial Loan & Investment
4,000.00
Valley Finance Co.
600.00
Equitable Savings & Loan
3,125.59
Total
$31.485.83 of $125 from Norman Kennedy and $3,281.66 from the sale of stock during 1961. Verna Hahn's net salary for 1961 was $282.26. The petitioner received dividends totaling $28. The petitioner's business expenses were as follows for 1961: Salaries & Wages
$ 9,202.00
Interest
2,149.62
Taxes
903.20
Depreciation
2,740.94
Repairs
396.33
Miscellaneous Expenses
6,662.65
Total Expenses
$22,054.74 15 In other transactions the petitioner had a loss on rentals of $159.55, capital gains of $198.19, and salary from Verna Hahn of $344.66. Petitioner had itemized deductions of $1,309.09 and two personal exemptions for 1961. On or about May 22, 1961 the petitioner applied to the Small Business Administration (SBA) for a loan of $25,000. The loan application listed the petitioner's net sales figures for 1959 and 1960 as $66,295.38 and $71,343.49, respectively. The loan application also contains the following information: 1959
1960 Withdrawals (for income tax purposes)
$ 622.66
$955.50
Personal withdrawals by owner or partner
10,513.50
8,778.20
Net profit after depreciation and withdrawals
2,739.89
6,025.58
$13,876.05
$15,759.28
In preparing the petitioner's loan application for the SBA, Erickson spread back accounts receivables for three years, allocating $14,898.68 to 1959, 1960 and 1961. The difference between the net sales figures on the application and those shown on petitioner's tax returns was due to the "hybrid method" of accounting used by petitioner, which did not reflect accounts receivables. The tax affairs of the petitioner were first investigated in October, 1962. The investigation was conducted by Special Agent Jack E. Goodrich, (hereinafter Goodrich) Special Agent 16 George J. Pace, and Omar L. Gottula. George J. Pace died August 30, 1966. When first contacted by the Special Agents, the petitioner was advised that he was under criminal investigation and was apprised of his constitutional rights. With his attorney present, petitioner exercised his right to remain silent and did not furnish the government with any books or records. However, he later provided the government with all the books and records in his possession. Special Agent Goodrich sent the following letter to over a hundred of the petitioner's customers: In re: Bernard B. Hahn d/b/a Ace Glass Company 733 North Broad Fremont, Nebraska
Dear Sir: This office is conducting an examination of the income tax liabilities of the above named person for the years 1959 through 1961. The investigation indicates that Mr. Hahn sold automobile glass or glass products and/or performed services for you during those years. It would be appreciated if you examine your records to determine if payments were made to him during this period. On the reverse side of this letter a schedule has been prepared for your convenience. It provides for date, amount, and method of payment. In the event your payments to him were by check, please include them with your reply. If payment was by currency, please include the sales slip or other form of receipt. They will be returned promptly.
This information is requested under the authority of Section 7602 of the Internal Revenue Code of 17 1954. A self-addressed envelope, which requires no postage, is enclosed for your reply. Very truly yours, [signed] Jack E. Goodrich Jack E. Goodrich Special Agent As a result of this survey, Goodrich concluded that some of the petitioner's business receipts were not deposited into his bank accounts. From 49 responses, Goodrich was able to conclude that at least $1,627.45, $3,850.79 and $498.94, representing business receipts in the years 1959, 1960 and 1961 respectively, were not deposited in any of the petitioner's bank accounts.
By using the bank deposits plus cash expenditures method of reconstructing income the respondent determined among other adjustments that the petitioner understated his gross business receipts by $8,092.14, $9,017.02 and $4,531.26 for the calendar years 1959, 1960 and 1961, respectively. Furthermore the respondent found that the petitioner had overstated his cost of goods sold for 1959 and 1960 by $10,742.15 and $323.19, respectively. The deficiency notices in both dockets herein were mailed on May 17, 1971. The petitioner's returns were due to be filed April 15, 1960, April 15, 1961 and April 15, 1962. 18 OPINION The first issue to be decided is whether assessment of deficiencies for the calendar years 1959, 1960 and 1961 is barred by the statute of limitations. See sections 6501(a) and 6501(e). The determination of this issue is dependent on whether the income tax returns filed by the petitioner were false and fraudulent with the intent to evade tax, within the meaning of section 6501(c) (1). SEC. 6501(c) (1) - Exceptions - (1) False return. - In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time. [5]↩
6. See Schmidt, Legal and Accounting Handbook of Federal Tax Fraud, Chapter VIII, p. 308 (1963). ↩